ECO, Incorporated, Petitioner-Appellant,

v.

City of Elkhorn, a Wisconsin municipal corpora-
tion, and Nancy B. Jacobson, City of Elkhorn,
City Clerk, Respondents-Respondents.

Court of Appeals

*No. 02–0216. Oral argument October 2, 2002.—Decided
November 20, 2002.*

2002 WI App 302

(Also reported in 655 N.W.2d 510.)

On behalf of the petitioner-appellant, there were briefs by *Linda S. Isnard* and *Terrance E. Nilles* of *von Briesen & Roper, S.C.*, Milwaukee. There were oral arguments by *Linda S. Isnard*.

On behalf of the respondents-respondents, there was a brief by *John M. Murphy* of *Leece & Phillips, S.C.*, Elkhorn. There were oral arguments by *Ward D. Phillips*.

Before Brown, Anderson and Snyder, JJ.

¶ 1. SNYDER, J. ECO, Incorporated appeals from a judgment and orders of the circuit court ruling that ECO's two requests for records to the City of Elkhorn, filed pursuant to the Freedom of Information Act (FOIA), were not open records requests pursuant to WIS. STAT. §§ 19.31 through 19.37 (1999–2000)[1] and thus not actionable via a writ of mandamus. ECO argues that the two requests qualified as requests under Wisconsin open records law despite the mistaken reference to FOIA. We agree that the two requests required, at the very least, a response from the City. We therefore reverse the judgment and orders of the circuit court and remand for proceedings consistent with this opinion.

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

## FACTS[2]

¶ 2. ECO is a Wisconsin corporation with its principal office in Elkhorn, Wisconsin. On or about April 24, 1996, ECO's president and CEO, E. Christian Olsen, submitted a written request to the City for access to various public records; the request was denominated a request pursuant to the Freedom of Information Act and read:

> Please provide us with the following information as allowed under F.O.I.A.:
>
> All engineering plans, prints, as built drawings, engineering and inspection reports as related to:
>
> 1. Deere Road sanitary sewer from a point 100' west of STH 67 to a point 800' west of STH 67.
>
> 2. Deere Road water main from and to points as defined in (1) above.
>
> 3. Deere Road storm sewer as defined in (1) above.
>
> 4. Deere Road as defined in (1) above.
>
> 5. Sanitary sewer main as is crossing property commonly referred to as lot #'s 2 and 3 of the Deere Road Industrial Park.

---

[2] In its appeal, ECO provides few, if any, citations to the record to corroborate the facts set out in its briefs; it instead cites to its own appendix. Such failure is a violation of WIS. STAT. RULE 809.19(1)(d) of the rules of appellate procedure, which requires parties to set out facts "relevant to the issues presented for review, *with appropriate references to the record.*" (Emphasis added.) An appellate court is improperly burdened where briefs fail to cite to the record. *Meyer v. Fronimades*, 2 Wis. 2d 89, 93–94, 86 N.W.2d 25 (1957).

6. Storm sewer within a 100' range of the northerly boundary of lot 1 of the Deere Road Industrial Park.

7. Any and all underground utilities owned, operated, or controlled by the City of Elkhorn within a 200' range of the boundaries of lot 2 and 3 of the Deere Road Industrial Park.

ECO was looking for these records because of severe water problems occurring on its property; ECO suspected the problems were caused by a disruption of either a man-made or natural underground flowage as a result of utility construction.

¶ 3. ECO eventually received a copy of a letter to the City from the City's engineers, Crispell-Snyder, Inc., and an "as-built" map. The letter, dated May 21, 1996, which specifically refers to ECO's request, indicates that Crispell-Snyder sent the City some of the requested items and informs the City that some of the requested records were not available at that office. However, ECO did not receive any formal response from the City either granting or denying its request. Olsen contacted the city clerk and asked if there were additional records but was told there were not any more. Thereafter,. ECO hired an engineering consultant, installed monitoring wells, did extensive excavations and brought in several tons of stone.[3]

---

[3] In 1997, ECO commenced litigation against the City for damages due to the City's alleged failure to maintain and protect from damage certain drain tiles which carried water across and beneath ECO's property. In early September 2000, in response to discovery requests, the City produced several documents related to the construction of a sanitary sewer along Deere Road and the maintenance of drain tiles draining ECO's property. These documents, dated in 1980, existed at the time of ECO's 1996 records request and had not been previously

¶ 4. On or about September 22, 2000, ECO submitted a second written request to the City virtually identical to the April 24, 1996 request; in addition, ECO requested the following:

> Please provide us with the following information as allowed under FOIA:
>
> 1. Any and all documents in your possession, your agents [sic] possession including but not limited to contracted insurance carriers and underwriters, their agents, engineering firms, or other contracted professional service offices, and in the possession of related City of Elkhorn affiliates or operating affiliates, past or present city officials and/or employees, including but not limited to the Elkhorn Light and Water Commission, relating to properties in the Deere Road Industrial Park North of the centerline of Deere Road contained within the following description:
>
> From a point 100' west of the intersection of Deere Road and Wisconsin State Highway 67 to a point 800' west of said intersection, and from the centerline of Deere Road in the City of Elkhorn to a point 400' north of the centerline of Deere Road, encompassing the period January 1977 thru [sic] August 2000, including but not limited to construction, land purchases, sales, transfers, zoning, zoning changes, taxation, memorandums, meeting minutes, or other form of written communication.
>
> 2. Your written explanation of the inability to provide any of the aforementioned items.

On October 16, 2000, the City, via legal counsel, responded to ECO's request:

---

produced. ECO's counsel submitted an offer of proof that it expended approximately $80,000 in costs in investigating the source of the water problems.

Please be advised that we have received your request for information under the Freedom of Information Act. Your request has fallen upon my desk for a response. I have researched the Freedom of Information Act and your request. Please be advised that neither the State of Wisconsin nor the City of Elkhorn is subject to the Freedom of Information Act. The Act applies only to federal agencies and does not create a right of access to records held by any state or local government agency. As such, we will not be responding to your request.

Wisconsin and the City of Elkhorn maintain open records pursuant to state law. Please feel free to make a request under a legitimate avenue.

¶ 5. On or about October 19, 2000, ECO resubmitted its requests for records to the City; the requests were identical to the September 22, 2000 requests except this time ECO specifically referenced Wisconsin public records law instead of FOIA. On December 1, 2000, ECO received a response from Elkhorn City Clerk Nancy B. Jacobson that read in relevant part as follows:

I am writing in regards to your request for records. I apologize for the delay; however, ther [sic] pressing business, which included the election and preparation of the tax roll, diverted my time to these and other matters.

I am in the process of assembling your request and hope to complete it in a timely fashion. In order to fulfill your request of engineering plans, prints, as built drawings, engineering and inspection reports, I am requesting copies from the engineers. As soon as the engineers respond to my request, I will send you the cost of copies. Once, [sic] I receive a check from you covering those costs, I will instruct the engineers to make the copies.

There will also be a charge for time and copies made by City staff. Copies are 25 cents plus tax and staff time is $13.40 per hour.

ECO never received any further response. ECO contacted the Walworth county district attorney's office for assistance in getting a response from the City; on at least two occasions, a Walworth county assistant district attorney contacted the City and urged them to comply with ECO's October 19, 2000 request.

¶ 6. On March 8, 2001, ECO filed a petition for writ of mandamus seeking disclosure of the requested documents and related damages, fees and costs; the circuit court signed the alternative writ of mandamus that same day, compelling the City to provide ECO with the requested information or show cause why not.

¶ 7. On March 23, 2001, ECO received a letter from Jacobson indicating that documents responsive to ECO's records requests were available for inspection and requesting a prepayment of $1137.70 for the City's related labor and copying costs.

¶ 8. On March 26, 2001, the circuit court held a "show cause" hearing. The City conceded a lack of defense to the open records request and agreed to produce the requested documents upon payment by ECO for its labor and copying costs. Based upon this representation, the circuit court declined to make the writ of mandamus absolute. That same day, Olsen paid the City's $1137.70 bill and was provided access to a large box of documents.

¶ 9. Despite these disclosures, Olsen remained suspicious that additional records existed. Olsen went to the city engineer's office to inquire about the existence of additional engineering records regarding ECO's property. While at the office, Olsen spoke with a city

employee, who showed him an entire drawer filled with files relating to the utilities on Deere Road near ECO's property. The city employee informed Olsen that the files contained all of the City's engineering records for ECO's property which would include as-built drawings, surveys, assessment notes, field notes and engineering drawings. The city employee informed Olsen that this file had been removed from the city engineer's office and sent to the city clerk's office to be copied in 1997, around the time ECO initiated its civil lawsuit against the City.

¶ 10. ECO's attorney then attempted to contact, via voice mail and a letter, the city attorney to inquire about the documents found in the city engineer's office. On March 29, 2001, the city attorney acknowledged receipt of these inquiries and declared that he was investigating the allegations but would not respond "until [he] ha[d] all of the facts before [him]." That same day, ECO sent a letter to the city attorney reiterating its demand for the records. Neither the City nor its attorney ever responded to this letter. Nor did the City produce any of the documents stored in the city engineer's office.

¶ 11. ECO therefore moved the circuit court to make the writ of mandamus absolute. ECO also requested that it be awarded actual, consequential and punitive damages and costs and attorney's fees associated with its attempts to secure a response from the City to the various open records requests.

¶ 12. After numerous hearings, the circuit court granted ECO's motion, in part. The circuit court held that the April 24, 1996 request and September 22, 2000 requests were not "requests" pursuant to open records law because they were titled FOIA requests. Thus,

according to the circuit court, the City was not required to adhere to the requirements of Wisconsin's open records law.

¶ 13. However, the circuit court found that the City violated WIS. STAT. § 19.35(4) in failing to timely respond to ECO's October 19, 2000 request. The circuit court also found that ECO's mandamus action was a "substantial factor" in the City's production of documents after the October 19, 2000 request and therefore ECO was entitled to $100 in damages and reasonable attorney's fees, but not punitive damages because neither the City nor Jacobson "acted arbitrarily or capriciously." The circuit court further held that ECO did not substantially prevail regarding the April 24, 1996 request or the September 22, 2000 request.

¶ 14. ECO submitted billing statements in support of its request for $14,351.42 in attorney's fees and actual costs of $861. The circuit court ultimately awarded ECO $11,951.42 in damages, attorney's fees and costs associated with the October 19, 2000 request. ECO appeals the circuit court's denial of its request for a writ of mandamus and associated damages, fees and costs relating to the April 24, 1996 and September 22, 2000 written requests.

## DISCUSSION

██

¶ 15. Where a circuit court, determining a petition for writ of mandamus, has interpreted Wisconsin's open records law, *see* WIS. STAT. §§ 19.31 through 19.39, and has applied that law to undisputed facts, we review the circuit court's decision de novo. *State ex rel. Milwaukee Police Ass'n v. Jones*, 2000 WI App 146, ¶ 11, 237 Wis. 2d 840, 615 N.W.2d 190. We do so ever mindful

of the legislature's declaration of policy that open records law must be construed "in every instance with a presumption of complete public access, consistent with the conduct of governmental business." *Id.* (citing § 19.31) (emphasis omitted).

¶ 16. WISCONSIN STAT. § 19.31 sets forth this policy declaration regarding open records:

> In recognition of the fact that a representative government is dependent upon an informed electorate, it is declared to be the public policy of this state that all persons are entitled to the greatest possible information regarding the affairs of government and the official acts of those officers and employees who represent them. Further, providing persons with such information is declared to be an essential function of a representative government and an integral part of the routine duties of officers and employees whose responsibility it is to provide such information. To that end, ss. 19.32 to 19.37 shall be construed in every instance with a presumption of complete public access, consistent with the conduct of governmental business. The denial of public access generally is contrary to the public interest, and only in an exceptional case may access be denied.

The open records law serves one of the basic tenets of our democratic system by providing an opportunity for public oversight of the workings of government. *Nichols v. Bennett*, 199 Wis. 2d 268, 273, 544 N.W.2d 428 (1996). This state recognizes a presumption of accessibility to public records, reflected in both the statutes and in our case law. *Id.*

¶ 17. Public policy and public interest favor the public's right to inspect public records. *Hathaway v. Joint Sch. Dist. No. 1, City of Green Bay*, 116 Wis. 2d 388, 392, 342 N.W.2d 682 (1984). Without an exception based upon statute, common law or an overriding public interest in nondisclosure, there is a presumption that the public has the right to inspect public records. *Id.* Public policy favors the right of inspection and it is only in the exceptional case that inspection should be denied. *Id.* at 396.

¶ 18. Where statutes, common law, or court decisions have not limited the public's right to examine records, "presumptively public records and documents must be open for inspection." *Id.* at 397 (citation omitted). "[P]ublic policy, and hence the public interest, favors the right of inspection of documents and public records." *Id.* (citation omitted). There exists the legislative presumption that "where a public record is involved, the denial of inspection is contrary to the public policy and the public interest." *Id.* (citation omitted). Thus, the general presumption of our law is that public records shall be open to the public unless there is a clear statutory exception, unless there exists a limitation under the common law or unless there is an overriding public interest in keeping the public record confidential. *Id.*

¶ 19. WISCONSIN STAT. § 19.31 must be broadly construed to favor disclosure. *Hathaway*, 116 Wis. 2d at 397. Exceptions must be recognized for what they are, instances in derogation of the general legislative intent, and must therefore be narrowly construed. *Id.* It would

be contrary to general well-established principles of open records statutes to hold that, by implication only, any type of record can be held from public inspection. *Id.*

*April 24, 1996 request*

¶ 20. ECO's April 24, 1996 request read:

Please provide us with the following information as allowed under F.O.I.A.:

All engineering plans, prints, as built drawings, engineering and inspection reports as related to:

1. Deere Road sanitary sewer from a point 100' west of STH 67 to a point 800' west of STH 67.

2. Deere Road water main from and to points as defined in (1) above.

3. Deere Road storm sewer as defined in (1) above.

4. Deere Road as defined in (1) above.

5. Sanitary sewer main as is crossing property commonly referred to as lot #'s 2 and 3 of the Deere Road Industrial Park.

6. Storm sewer within a 100' range of the northerly boundary of lot 1 of the Deere Road Industrial Park.

7. Any and all underground utilities owned, operated, or controlled by the City of Elkhorn within a 200' range of the boundaries of lot 2 and 3 of the Deere Road Industrial Park.

ECO argues that this request qualified as a request within the meaning of open records law despite the mistaken reference to FOIA. ECO argues that on its

face, this request was subject to WIS. STAT. §§ 19.31 through 19.37 and the City should have either fulfilled the request or notified ECO in writing of any determination to deny the request.

¶ 21. The City concedes that the April 24, 1996 request met the requirements of an open records request and that the body of the letter adequately describes open records. However, the City argues that because the request was filed pursuant to FOIA and the City is not subject to said Act, it did not have a duty to respond. Such assertions are contrary to the strong public policies behind open records law and the language of open records statutes. We conclude that because the letter clearly describes open records and the letter had all the earmarkings of an open records request, the April 24, 1996 letter was in fact an open records request and triggered, at a minimum, a duty to respond to the request.

¶ 22. WISCONSIN STAT. § 19.35(1) addresses the public's right to inspection and states, in pertinent part:

> (a) Except as otherwise provided by law, any requester has a right to inspect any record. Substantive common law principles construing the right to inspect, copy or receive copies of records shall remain in effect. The exemptions to the requirement of a governmental body to meet in open session under s. 19.85 are indicative of public policy, but may be used as grounds for denying public access to a record only if the authority or legal custodian under s. 19.33 makes a specific demonstration that there is a need to restrict public access at the time that the request to inspect or copy the record is made.
>
> . . . .

(h) *A request under pars. (a) to (f) is deemed sufficient if it reasonably describes the requested record or the information requested.* However, a request for a record without a reasonable limitation as to subject matter or length of time represented by the record does not constitute a sufficient request. A request may be made orally, but a request must be in writing before an action to enforce the request is commenced under s. 19.37. (Emphasis added.)

¶ 23. None of these statutes requires a request to contain any "magic words" nor do they prohibit the use of any words. While "request" is not defined anywhere in open records law, a request is deemed sufficient if "it reasonably describes the requested record or the information requested." Wɪs. Sᴛᴀᴛ. § 19.35(1)(h). Here, the City concedes as much. We conclude that the use of FOIA does not render it a nonrequest.[4] Because a request must only reasonably describe the requested record or information requested, because nothing in

---

[4] The City spends much time and energy arguing that FOIA does not apply to it, relying on *State ex rel. Hill v. Zimmerman*, 196 Wis. 2d 419, 538 N.W.2d 608 (Ct. App. 1995), for support. This is a nonstarter. No one argues that the City is subject to FOIA and therefore compelled to produce the documents pursuant to this law. Moreover, the City's reliance on *Hill* is misplaced. The City claims that *Hill* holds that FOIA only applies to federal agencies and because the City is not a federal agency, it cannot be compelled to respond to a FOIA request. In *Hill*, a prisoner filed an open records request, was denied and then brought a mandamus action. *Id.* at 423–24. Among Hill's theories of relief was that FOIA entitled him to the records. *Id.* at 428 n.6. We rejected this theory. *Id.* But again, ECO is not claiming in this mandamus action that it was entitled to the records under FOIA. ECO argues that it is entitled to the admittedly open records *despite* the FOIA label, *not because* of it.

open records law prohibits the use of any certain words, because the City concedes that the letter meets the requirements of an open records request and because the legislature's well-established public policy presumes accessibility to public records and mandates that open records law be liberally construed to favor disclosure, we conclude that the April 24, 1996 letter was, in fact, an adequate open records request.

■■■■

¶ 24. Open records law mandates action once a request is received; WIS. STAT. § 19.35(4) addresses time for compliance and states, in relevant part:

> (a) Each authority, upon request for any record, *shall*, as soon as practicable and without delay, *either fill the request or notify the requester of the authority's determination to deny the request in whole or in part and the reasons therefor*. (Emphasis added.)

Thus, under § 19.35(4)(a), receipt of an open records request triggers either a duty to respond to the request or a duty to produce the requested records. Here, the City neither responded to the April 24, 1996 request nor produced the requested documents. It is incumbent upon the custodian of the public record who refused the demand of inspection to "state specifically the reasons for this refusal." *Hathaway*, 116 Wis. 2d at 396 (citation omitted). A custodian's denial of access to a public record must be accompanied by a statement of the specific public policy reasons for the refusal. *Chvala v. Bubolz*, 204 Wis. 2d 82, 86–87, 552 N.W.2d 892 (Ct. App. 1996). The City did not provide any response whatsoever and therefore did not comply with open records law.

*September 22, 2000 request*

██

¶ 25. ECO submitted a second request to the City that was virtually identical to the April 24, 1996 request; in addition, ECO submitted the following:

> Please provide us with the following information as allowed under FOIA:
>
> 1. Any and all documents in your possession, your agents [sic] possession including but not limited to contracted insurance carriers and underwriters, their agents, engineering firms, or other contracted professional service offices, and in the possession of related City of Elkhorn affiliates or operating affiliates, past or present city officials and/or employees, including but not limited to the Elkhorn Light and Water Commission, relating to properties in the Deere Road Industrial Park North of the centerline of Deere Road contained within the following description:
>
> From a point 100' west of the intersection of Deere Road and Wisconsin State Highway 67 to a point 800' west of said intersection, and from the centerline of Deere Road in the City of Elkhorn to a point 400' north of the centerline of Deere Road, encompassing the period January 1977 thru [sic] August 2000, including but not limited to construction, land purchases, sales, transfers, zoning, zoning changes, taxation, memorandums, meeting minutes, or other form of written communication.
>
> 2. Your written explanation of the inability to provide any of the aforementioned items.

However, this time; the City responded to the request:

> Please be advised that we have received your request for information under the Freedom of Information Act. Your request has fallen upon my desk for a response. I have researched the Freedom of Information Act and your request. Please be advised that neither the State of Wisconsin nor the City of Elkhorn is subject to the Freedom of Information Act. The Act applies only to federal agencies and does not create a right of access to records held by any state or local government agency. As such, we will not be responding to your request.
>
> Wisconsin and the City of Elkhorn maintain open records pursuant to state law. Please feel free to make a request under a legitimate avenue.

Again, the City argues that it did not have a duty to produce the records in question because it was not subject to FOIA. ECO maintains that the letter qualified as a request under open records law despite the FOIA label. We agree with ECO.

¶ 26. Again, nothing in the open records law prohibits the use of any words or requires a request to contain any "magic words"; a request is deemed sufficient so long as "it reasonably describes the requested record or the information requested." WIS. STAT. § 19.35(1)(h). We must conclude that the September 22, 2000 letter was an adequate open records request which triggered the City's duties upon open records law.

¶ 27. In contrast to the April 24, 1996 request, here the City responded with a denial based upon the inapplicability of FOIA. We conclude that this denial was erroneous. Public records shall generally be presumed open to the public unless there is a clear statutory exception, unless there exists a limitation under the common law, or unless there is an overriding public interest in keeping the public record confidential. *Hathaway*, 116 Wis. 2d at 397.

¶ 28. We know of no statutory or common law exception, nor has the City cited to any, that allows a denial of access to public records based upon extraneous information in the request or a mislabeling of the request. Moreover, the City has not argued an overriding public interest in keeping the public records confidential. Exceptions to public access must be recognized as instances in derogation of the general legislative intent and must therefore be narrowly construed. *Id.* It would be contrary to general well-established principles of open records statutes to hold that, by implication only, any type of record can be held from public inspection. *Id.* The September 22, 2000 letter was a proper open records request and the City has not cited any accepted exception for its refusal to produce the records.

¶ 29. WISCONSIN STAT. § 19.37 addresses enforcement and penalties and states, in relevant part:

> **(1)** MANDAMUS. If an authority withholds a record or a part of a record or delays granting access to a record or part of a record after a written request for disclosure is made, the requester may pursue either, or both, of the alternatives under pars. (a) and (b).
>
> (a) The requester may bring an action for mandamus asking a court to order release of the record. The court may permit the parties or their attorneys to have access to the requested record under restrictions or protective orders as the court deems appropriate.
>
> . . . .
>
> **(2)** COSTS, FEES AND DAMAGES. (a) Except as provided in this paragraph, *the court shall award reasonable attorney fees, damages of not less than $100, and other actual costs to the requester if the requester prevails in whole or in substantial part in any action filed under*

*sub. (1) relating to access to a record or part of a record under s. 19.35(1)(a)* . . . . Costs and fees shall be paid by the authority affected or the unit of government of which it is a part, or by the unit of government by which the legal custodian under s. 19.33 is employed and may not become a personal liability of any public official.

(b) In any action filed under sub. (1) relating to access to a record or part of a record under s. 19.35(1)(am), if the court finds that the authority acted in a wilful or intentional manner, the court shall award the individual actual damages sustained by the individual as a consequence of the failure.

(3) PUNITIVE DAMAGES. If a court finds that an authority or legal custodian under s. 19.33 has arbitrarily and capriciously denied or delayed response to a request or charged excessive fees, the court may award punitive damages to the requester.

(4) PENALTY. Any authority which or legal custodian under s. 19.33 who arbitrarily and capriciously denies or delays response to a request or charges excessive fees may be required to forfeit not more than $1,000. Forfeitures under this section shall be enforced by action on behalf of the state by the attorney general or by the district attorney of any county where a violation occurs. In actions brought by the attorney general, the court shall award any forfeiture recovered together with reasonable costs to the state; and in actions brought by the district attorney, the court shall award any forfeiture recovered together with reasonable costs to the county. (Emphasis added.)

¶ 30. Because the City failed to respond to ECO's request and thus failed to comply with the requirements of WIS. STAT. § 19.35(4)(a), ECO is entitled to costs, fees and damages pursuant to WIS. STAT. § 19.37(2). The circuit court took the issue of damages

under advisement pending a decision on whether the April 24, 1996 and September 22, 2000 letters constituted open records requests. Once the circuit court determined that the two letters were not open records requests, the issue of damages became moot and was not addressed. Because we conclude that both the April 24, 1996 letter and September 22, 2000 letter were, in fact, open records requests which were wrongfully denied, damages must be addressed. We therefore remand this matter to the circuit court to address the issue of damages.

## CONCLUSION

¶ 31. Both the April 22, 1996 letter and September 22, 2000 letter were open records requests and the City failed in its duty under open records law to produce the records in question. The circuit court erred in ruling otherwise and in refusing to consider damages. We therefore reverse the judgment and orders and remand this matter to the circuit court for proceedings consistent with this opinion.

*By the Court.*—Judgment and orders reversed and cause remanded with directions.