The JOURNAL TIMES and Steve Lovejoy,
Plaintiffs-Appellants,

v.

CITY OF RACINE BOARD OF
POLICE AND FIRE COMMISSIONERS,
Defendant-Respondent.

Court of Appeals

*No. 2013AP1715. Submitted on briefs February 27, 2014.
—Decided May 28, 2014.*

2014 WI App 67

(Also reported in 849 N.W.2d 888.)

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Robert J. Dreps* of *Godfrey & Kahn, S.C.*, Madison.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Scott R. Letteney* of *Office of the City Attorney*, Racine.

Before Brown, C.J., Reilly and Gundrum, JJ.

¶ 1. REILLY, J.    The Open Meetings Law provides that "[t]he motions and roll call votes of each meeting of a governmental body shall be recorded, preserved and open to public inspection to the extent prescribed in" the Open Records Law. WIS. STAT. § 19.88(3) (2011–12).[1] Following a closed meeting of the City of Racine Board of Police and Fire Commissioners (Commission) regarding the selection of a new police chief, The Journal Times (Newspaper) filed an Open Records request for the motions and roll call votes cast at that meeting. The Commission denied the request, asserting that it did

---

[1] All references to the Wisconsin Statutes are to the 2011–12 version unless otherwise noted.

not have to release information from a closed meeting and that one or more commissioners had safety concerns if the information was released. Recognizing that neither reason was supported under the Open Records Law, the Newspaper commenced this action to compel the release of the information.

¶ 2. The Commission released the responsive information in the form of an email to the Newspaper six days after this action was filed, on March 22, 2012. Two months later in its answer to the Newspaper's complaint, the Commission asserted for the first time that no record responsive to the Newspaper's request ever existed.[2] The trial court dismissed the mandamus action on the ground that as no written record existed at the time of the Newspaper's request, no action under the Open Records Law could be brought. We reverse and remand solely for a determination of whether the Newspaper is entitled to attorney fees and costs. When the Commission denied the Open Records requests, the Commission told the Newspaper that it would not provide the record "at this time" and, as a compromise, would provide the information after a new police chief was selected. The Commission never told the Newspaper that a record did not exist. The Commission is and was estopped from raising the issue of whether a record existed as a defense against attorney fees and costs. If this mandamus action was a cause of the March 22 release, then the Newspaper is entitled to recover its attorney fees and costs under Wis. Stat. § 19.37(2).

---

[2] This panel is divided over whether the Open Records Law imposes a duty only as to records as defined by Wis. Stat. § 19.32(2) or whether the duty is to provide information required to be kept by a governmental body. As this issue is not essential to this decision, we leave that determination for another day.

## FACTS

¶ 3.  The city of Racine's police chief retired in May 2011, and the Commission commenced a search for his replacement. The Commission received twenty-three applications, determined that eleven met minimum requirements for the job, and interviewed five candidates. In early February 2012, three finalists were announced to the public. Two of the finalists were minorities; one was not. On February 17, the nonminority finalist notified the Commission that he was withdrawing his application. On February 20, the Commission called a closed meeting to address the withdrawal. At that meeting, a motion was made to reopen the search to review a "broader pool of candidates." The motion was seconded and passed on a 3–2 vote.

¶ 4.  On February 22, the Newspaper made a written request upon the Commission "for the recorded motions and votes of each PFC commissioner at the closed meeting on [February 20], including who made the motion and who seconded it." The Commission's first written response to the Newspaper's request was on March 7 when Scott Letteney, deputy city attorney for the city of Racine, denied "[o]n behalf of, and at the direction of, the City of Racine Board of Police and Fire Commissioners . . . [y]our request for the specific vote of the City of Racine Board of Police and Fire Commissioners, by member, taken in closed session on February 20, 2012." Letteney indicated that the basis for denial was found in *State ex rel. Cities Service Oil Co. v. Board of Appeals*, 21 Wis. 2d 516, 539, 124 N.W.2d 809 (1963), where the Wisconsin Supreme Court held that "voting is an integral part of deliberating and merely formalizes the result reached in the deliberating process." The Commission was apparently of the opinion that because

the vote occurred after deliberation that the vote itself was akin to deliberation that did not need to be disclosed.

¶ 5. The Newspaper asked the Commission to reconsider its basis for denial. On March 9, the Commission, via Letteney, identified a new reason for denial: "significant public policy bases" that revolved around one or more commissioners expressing "reasonable concerns for (his)(her)(their) personal well-being if the specifics of the vote are released." The Commission also stated that "there has been a disproportionate focus on race and an inaccurate perception that discrimination has played some role in the decision-making in the police chief selection process" and that "[t]he release of the specifics of the vote *at this time* will certainly exacerbate these issues." (Emphasis added.) The Commission offered a "compromise" to the Newspaper: it would release the information requested by the Newspaper "within five business days after a new police chief has been hired." The Newspaper declined the Commission's "compromise" and renewed its request for the motion's sponsors and how each commissioner voted. The Commission refused, and on March 16, the Newspaper filed this mandamus action under the Open Records Law. Six days later, on March 22, the Commission provided the requested information in an email to the Newspaper.

¶ 6. Nearly two months later, in its initial response to this action, the Commission asserted for the first time that no record responsive to the Newspaper's February 22 request "ever existed." The Commission later argued that it did not even begin to create a record of its February 20 vote until May 2012 when it drafted the minutes for the February 20 meeting. The Commission moved for summary judgment, arguing that as no

record existed at the time of the Newspaper's request, it had not violated the Open Records Law. The Newspaper argued, inter alia and to no avail, that the Commission was estopped from making any argument that a record did not exist at the time of the request. The trial court agreed with the Commission and granted summary judgment, finding that as of the Newspaper's February 22 request, "there wasn't any written recording to be supplied," and dismissed the mandamus action.

## STANDARD OF REVIEW

¶ 7. Where a trial court in considering a request for relief under the Open Records Law has applied undisputed facts to that law, we review the trial court's decision de novo. *ECO, Inc. v. City of Elkhorn*, 2002 WI App 302, ¶ 15, 259 Wis. 2d 276, 655 N.W.2d 510. Resolution of a motion to dismiss a complaint that relies on statutory interpretation is also subject to de novo review. *State ex rel. Schultz v. Wellens*, 208 Wis. 2d 574, 576, 561 N.W.2d 775 (Ct. App. 1997).

## DISCUSSION

¶ 8. The Open Meetings Law provides that "[t]he motions and roll call votes of each meeting of a governmental body shall be recorded, preserved and open to public inspection to the extent prescribed in" the Open Records Law. WIS. STAT. § 19.88(3). The form and manner of how the vote occurs is not mandatory; all that is necessary is that the "vote of each [member] may be ascertained and recorded." 61 OP. ATT'Y GEN. 113

(1972).[3] This provision applies to both open and closed meetings. 65 Op. Att'y Gen. ix (1976).

¶ 9.    The record of a closed governmental meeting —i.e., the motions and votes—may be withheld from public disclosure only if the government can make a specific demonstration of the need to restrict public access at the time of the request. *Oshkosh Nw. Co. v. Oshkosh Library Bd.*, 125 Wis. 2d 480, 485, 373 N.W.2d 459 (Ct. App. 1985). The burden is on the government to state specific reasons supported by statute, common law, or public policy when denying a record request. *Watton v. Hegerty*, 2008 WI 74, ¶ 8 n.9, 311 Wis. 2d 52, 751 N.W.2d 369. A governmental body must produce the record or give a statutorily acceptable reason for denial "as soon as practicable and without delay." Wis. Stat. § 19.35(4)(a).

¶ 10.    If an authority withholds a record or delays granting access to a record, a record requester may bring an action for mandamus asking a court to order the release of the requested record. Wis. Stat. § 19.37(1)(a). Voluntary release following the institution of a mandamus action renders such an action moot. *Racine Educ. Ass'n v. Board of Educ.*, 129 Wis. 2d 319, 323–24, 385 N.W.2d 510 (Ct. App. 1986). A record requester whose mandamus action is rendered moot by the voluntary release of sought-after information, however, may still be entitled to attorney fees and costs. *See id.* at 325.

[3] Our supreme court instructs that we should give substantial weight to the state attorney general's opinions in the area of the Open Meetings Law and Open Records Law. *State v. Beaver Dam Area Dev. Corp.*, 2008 WI 90, ¶ 37, 312 Wis. 2d 84, 752 N.W.2d 295.

¶ 11. In this case, the Newspaper reasonably relied on the statutory requirement that the Commission create, maintain, and release a record of the motions and votes at the February 20 meeting when it requested information regarding the motions and votes from that meeting. In providing the requested information following the initiation of this action, the Commission rendered moot the Newspaper's request for a writ of mandamus. The fact that the Newspaper's record request became moot when the Commission provided the information, however, does not mandate dismissal of the entire action. The Newspaper still has a viable claim for attorney fees and costs if the litigation "was *a* cause, not *the* cause" of the Commission's March 22 release. *See WTMJ, Inc. v. Sullivan*, 204 Wis. 2d 452, 458–59, 555 N.W.2d 140 (Ct. App. 1996). To hold otherwise in this case would undermine the purpose of both the Open Meetings and Open Records Laws—transparency in government. *See State ex rel. Auchinleck v. Town of LaGrange*, 200 Wis. 2d 585, 595, 547 N.W.2d 587 (1996). We therefore remand to the trial court for an evidentiary hearing on whether the filing of the lawsuit was a cause of the March 22 release of information and, if so, for a determination of attorney fees and costs.

¶ 12. We also hold that the Commission is estopped from arguing that a record of the vote did not exist. "The elements of equitable estoppel are: (1) action or non-action, (2) on the part of one against whom estoppel is asserted, (3) which induces reasonable reliance thereon by the other, either in action or non-action, and (4) which is to his or her detriment." *Milas v. Labor Ass'n of Wis., Inc.*, 214 Wis. 2d 1, 11–12, 571 N.W.2d 656 (1997). On March 9, the Commission

told the Newspaper in an email that it would not "release the specifics of the vote at this time." The Commission in the same email said it would release the information five days after a new chief was selected. The Commission's assertions that it would not give the information requested "at this time" and that it would release the information upon the occurrence of a specific event (the hiring of a new chief) induced the Newspaper to believe not only that a record existed but that the Commission was denying the Newspaper access to this record for impermissible reasons. It is clear from this March 9 email that the Commission had the information requested and either refused to provide a record or, at a minimum, was delaying access to a record. The Commission's assertions thereby induced the Newspaper to file this action and incur attorney fees and costs. We find, under these undisputed facts, that all of the elements of equitable estoppel are satisfied and a remand for fact-finding on this issue is not necessary. *See DOR v. Moebius Printing Co.*, 89 Wis. 2d 610, 634–35, 279 N.W.2d 213 (1979).

■■■

¶ 13.   Even though we are cautious in applying the doctrine of equitable estoppel against government entities, here is a clear-cut case where it is appropriate. Employing estoppel against the government is available "if the government's conduct would work a serious injustice and if the public's interest would not be unduly harmed by the imposition of estoppel." *Fritsch v. St. Croix Central Sch. Dist.*, 183 Wis. 2d 336, 344–45, 515 N.W.2d 328 (Ct. App. 1994) (citation omitted). Employing equitable estoppel under these egregious facts benefits the public interest in transparency in government. The Newspaper was acting on behalf of the public when it sought information to which it was legally entitled.

Had the Commission been forthright in its dealings with the Newspaper, this litigation might have been avoided altogether, conserving the Commission's resources as well as the Newspaper's. *See Milas,* 214 Wis. 2d at 13.

## CONCLUSION

¶ 14. We remand to the trial court for a determination of whether this lawsuit was "a" cause of the Commission's release of the responsive information, and if so, a determination of attorney fees and costs under WIS. STAT. § 19.37(2).

*By the Court.*—Order reversed and cause remanded with directions.