**COURT OF APPEALS
DECISION
DATED AND FILED**

**March 23, 2022**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos.**   **2021AP1530
2021AP1531**

Cir. Ct. Nos. **2020TR7035
2020TR7032**

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT II**

CITY OF WAUKESHA,

   PLAINTIFF-APPELLANT,

 V.

BRIAN JOHN ZIMMER,

   DEFENDANT-RESPONDENT.

        APPEALS from an order of the circuit court for Waukesha County: DENNIS P. MORONEY, Reserve Judge. *Reversed and cause remanded for further proceedings*.

¶1     GROGAN, J.[1]     The City of Waukesha appeals from the circuit court's order dismissing Brian John Zimmer's citations for operating a motor vehicle under the influence of an intoxicant (OWI) and with a prohibited alcohol concentration (PAC) and suppressing the preliminary breath test (PBT) result. The City contends both that the circuit court erred in concluding no probable cause to arrest Zimmer existed independent from the PBT and that the words the officer used to administer the PBT complied with WIS. STAT. § 343.303. Because the arresting officer possessed sufficient probable cause to arrest Zimmer before administering the PBT test, this court reverses and remands for further proceedings consistent with this opinion.

## I. BACKGROUND

¶2     On a Friday night in early November 2020, City of Waukesha Police Officer Christopher Moss observed a car drive through two red lights. After Officer Moss activated his squad lights and proceeded to stop the car, the driver attempted to turn into a parking lot but missed the lot's entrance apron and jumped the curb before stopping. The officer parked his squad car behind the stopped car and observed the driver, identified as Zimmer, get out of his car and start walking towards the rear. The officer opened his squad door and gave multiple verbal commands to Zimmer, who "appeared confused" by the officer's instructions "to get back into [his car]." When Officer Moss approached the car and asked for identification, he observed that Zimmer struggled to get his driver's license out of

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(b) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

2

his wallet and that Zimmer's eyes were bloodshot and glassy and his speech was slightly slurred. Zimmer denied consuming any alcohol.

¶3      The officer instructed Zimmer, who had followed the prior instruction to return to his vehicle, to get out of his car so the officer could conduct field sobriety tests. Prior to beginning the tests, Officer Moss performed a pat-down search and discovered Zimmer had defecated in his pants, which the officer could smell. He then administered the Horizontal Gaze Nystagmus (HGN) test, which showed Zimmer exhibited six clues. In Officer Moss's experience, exhibiting six clues on that test typically means a person's blood alcohol concentration is greater than the legal limit of .08. Zimmer did not have vertical gaze nystagmus or lack of convergence, which Officer Moss explained were also components of the HGN test. The convergence test is used to detect whether the driver may be under the influence of certain drugs, not alcohol.[2] Zimmer was unable to follow the officer's instructions and failed to successfully complete the walk-and-turn field sobriety test because he could not keep his balance, step heel-to-toe as instructed, and needed to raise his arms. Zimmer was also unable to successfully complete the one-legged stand test, as he was unable to keep his balance and raised his arms contrary to the instructions. The officer had to end the one-legged stand test early so Zimmer would not fall and hurt himself.

¶4      The officer also conducted three verbal tests, including the alphabet, number, and month tests. Zimmer was able to perform these tests adequately with

---

[2] Zimmer's counsel told the court that the "convergence test is a test geared towards detecting drug use, not alcohol."

3

the exception of the number test, where he was instructed to count from eighty-two to sixty-eight but instead did not stop until he reached sixty-one.

¶5      Officer Moss then obtained a PBT from Zimmer. The parties agreed that the officer, before administering the PBT, said to Zimmer: "What I am going to have you do is wrap your lips around this like a balloon and blow into it like a balloon. Okay?" Zimmer then did so and Officer Moss thereafter informed him he was being placed under arrest. The PAC citation issued to Zimmer in regard to this incident reflects that a subsequent blood test showed his blood alcohol concentration was .14. Zimmer pled not guilty, and the case was transferred from municipal court to circuit court upon Zimmer's request for a jury trial.

¶6      Zimmer filed a motion to suppress in the circuit court arguing that Officer Moss *ordered* rather than *requested* that Zimmer provide a PBT. Zimmer's motion contained a "statement of facts" and asserted that the officer had already decided to arrest Zimmer *before* administering the PBT:

- "Officer Moss, however, had already made his decision to arrest Mr. Zimmer for an operating while intoxicated violation based upon his driving behavior, his performance on the field sobriety tests, and other subjective indicia of impairment."

- Officer Moss "concluded that Mr. Zimmer would be arrested before he administered the PBT."

¶7      The circuit court held a suppression hearing on Zimmer's motion. Before taking any testimony, the circuit court heard argument as to whether the words Officer Moss used prior to administering the PBT violated WIS. STAT. § 343.303, which provides: "the officer, prior to an arrest, may *request* the person

4

to provide a sample of his or her breath for a preliminary breath screening test."[3] *Id.* (emphasis added). Zimmer argued the statute requires an officer to *request* a driver submit to a PBT and that what happened here was not a *request* but was instead a *demand*. The State argued the language the officer used was in fact a *request*—that Zimmer "gave consent by blowing into the unit after the officer sa[id] okay?" The circuit court ruled in Zimmer's favor, explaining it thought the words the officer used were a directive and that an officer must use the magic word "request" in order to comply with the statute.[4] The circuit court reasoned:

> Request is basically an allowance for an option. There were no options given to [Zimmer] in this case. I think it is

---

[3] As relevant, WIS. STAT. § 343.303 provides:

> **Preliminary breath screening test**. If a law enforcement officer has probable cause to believe that the person is violating or has violated [WIS. STAT. §] 346.63(1) or (2m) or a local ordinance in conformity therewith, … the officer, prior to an arrest, may request the person to provide a sample of his or her breath for a preliminary breath screening test using a device approved by the department for this purpose. The result of this preliminary breath screening test may be used by the law enforcement officer for the purpose of deciding whether or not the person shall be arrested for a violation of [§] 346.63(1), (2m), (5) or (7) or a local ordinance in conformity therewith, or [§] 346.63(2) or (6), [WIS. STAT. §§] 940.09(1) or 940.25 and whether or not to require or request chemical tests as authorized under [WIS. STAT. §] 343.305(3). The result of the preliminary breath screening test shall not be admissible in any action or proceeding except to show probable cause for an arrest, if the arrest is challenged, or to prove that a chemical test was properly required or requested of a person under [§] 343.305(3). Following the screening test, additional tests may be required or requested of the driver under [§] 343.305(3). The general penalty provision under [WIS. STAT. §] 939.61(1) does not apply to a refusal to take a preliminary breath screening test.

[4] Specifically, the circuit court stated it believed "the word request should be part of the parlance that is used in the situation" and recommended to Officer Moss that he should "use the word request" when attempting to administer a PBT.

5

important that under PBT usage that the option aspect of the PBT is such that, you know, it is a magic word which because of the nature of the beast should be used.

¶8 The circuit court then proceeded with an evidentiary hearing to determine whether Officer Moss had probable cause to arrest Zimmer for OWI before administering the PBT. Only Officer Moss testified at the hearing. He testified about observing Zimmer drive through the red lights, hit the curb on his way into the parking lot, get out of his car and have difficulty understanding the officer's verbal commands to get back in his car, and struggle to get his driver's license out of his wallet. He testified that he also personally observed that Zimmer's eyes were bloodshot and glossy, that Zimmer had defecated in his pants, and that Zimmer could not successfully pass the physical field sobriety tests. Officer Moss testified that he observed "six out of six total clues for the horizontal gaze nystagmus test," which led him "to believe that the subject was impaired by an intoxicant." The officer had administered the HGN test on OWI suspects over 100 times.

¶9 Officer Moss also testified that Zimmer successfully completed the verbal field sobriety tests, with the exception of the number test, and that Zimmer did not have vertical gaze nystagmus or lack of convergence, which are two components of the HGN test.

¶10 Although Officer Moss did not arrest Zimmer until after administering the PBT test, he testified he believed he had probable cause to arrest based solely on his observations and the field sobriety tests:

> Q But based on your observations of the Defendant and his performance on the field sobriety tests, were you able to form an opinion as to the Defendant's condition?

6

A    Yes.  Based on the totality of the circumstances between observing his operation of a motor vehicle and those violations as well as my initial observations upon making first contact and his performance on the standard field sobriety testing, I believed there was probable cause to take him into custody for operating while intoxicated.

Q    And that would be why you told him he was under arrest.  Correct?

A    That is correct.

¶11    Significantly, when the circuit court directly asked Officer Moss whether he believed he had probable cause to arrest Zimmer *before* administering the PBT, Officer Moss testified: "Yes, your Honor.  I did."  The transcript reflects the following exchange:

THE COURT:  Before you administered the PBT, sir, did you feel you had probable cause to arrest this man?

THE WITNESS:  Yes, your Honor.  I did.

THE COURT:  Why didn't you?

THE WITNESS:  I am not following the question.  I am sorry.

THE COURT:  Well if I completed my six tests and you say I failed five of the six, or whatever, how many I failed, I certainly failed all the physical ones practically and I certainly misspoke as far as the count down, did the other two tests right, so four of six I kind of failed, at that point why didn't you arrest him?

THE WITNESS:  Because we attempt to utilize a PBT to determine the level of intoxication on the subject as far as where they are at or if there is possibility that a drug or narcotic is involved as well.

THE COURT:  Yeah, but it is not even admissible anyway.  You know that.

THE WITNESS:  Yes, sir.  I do.

THE COURT:  So what difference does it make?

THE WITNESS: I guess none.

THE COURT: I mean, you know.

THE WITNESS: That's fair.

THE COURT: I hate to say that, but if you have probable cause to believe he was drunk or operating under the influence or under some kind of impaired condition, you know, at that time you arrest him, you ask him for his blood work. If he denies that, then you get a search warrant.

THE WITNESS: Yes, sir.

THE COURT: But you didn't do that.

THE WITNESS: No, sir.

The circuit court was clearly troubled by the fact that the officer proceeded to do the PBT despite testifying he believed he already had sufficient probable cause to arrest from his observations up to that point. Expressing its belief that an officer should not administer a PBT if the officer believes there is probable cause to arrest prior to performing a PBT, the circuit court said:

- "If [at] a point in time he [the officer] has probable cause to arrest, he should arrest."

- "I think they should get rid of the [PBT], to be honest with you. I think it just confuses issues, this being one of them."

¶12 The circuit court also said it "personally" thought Officer Moss "had more than enough probable cause before the PBT," but then concluded that because Officer Moss administered the PBT instead of simply arresting Zimmer without it, he must not have actually believed—despite his uncontroverted testimony to the contrary—that he had sufficient probable cause prior to administering the PBT. The circuit court concluded that without probable cause independent of the PBT, which it had already ruled was not performed in

8

accordance with the PBT statute, anything that followed was fruit of the poisonous tree and therefore dismissed Zimmer's OWI and PAC citations.  The City appeals.

## II.  STANDARD OF REVIEW

¶13     When reviewing a suppression motion, the circuit court's findings of fact will be upheld unless they are clearly erroneous.  *State v. Roberts*, 196 Wis. 2d 445, 452, 538 N.W.2d 825 (Ct. App. 1995).  However, whether a set of facts constitutes probable cause is a question of law this court reviews de novo.  *State v. Babbitt*, 188 Wis. 2d 349, 356, 525 N.W.2d 102 (Ct. App. 1994).  This court examines the issue of probable cause anew and without deference to the circuit court. *See id.*  In deciding whether probable cause exists, this court looks at whether the totality of the circumstances within the officer's knowledge at the time would lead a reasonable police officer to believe the defendant was operating a motor vehicle while under the influence of an intoxicant.  *State v. Nordness*, 128 Wis. 2d 15, 36-37, 381 N.W.2d 300 (1986).  The objective facts before a police officer need not prove guilt beyond a reasonable doubt; rather, they are sufficient if they lead to the conclusion that a violation of the law is more than a mere possibility. *State v. Richardson*, 156 Wis. 2d 128, 148, 456 N.W.2d 830 (1990).

## III.  DISCUSSION

¶14     The City argues both that the officer had sufficient probable cause to arrest Zimmer prior to administering the PBT and that the words the officer used satisfy the PBT statute's "request" language.  Zimmer disagrees.  He argues that the probable cause determination—without the PBT taken into consideration—is tied to credibility and that the circuit court found the officer's testimony to be

9

untruthful. Zimmer also argues that the words the officer used before administering the PBT were not a *request*, which the statute requires.

¶15 Zimmer is correct that credibility decisions are within the province of the factfinder, *see **Gehr v. City of Sheboygan***, 81 Wis. 2d 117, 122, 260 N.W.2d 30 (1977), and this court's review of the record shows the circuit court found the officer to be credible *except* when responding to the circuit court's direct question about whether the officer believed he had sufficient probable cause to arrest before conducting the PBT.[5] This is clearly evident from the circuit court's statement that it "personally [thought] [the officer] had more than enough probable cause before the PBT," as there is nothing in the record aside from Officer Moss's testimony about what he observed prior to administering the PBT to be credible that would otherwise support the circuit court's belief. The record also demonstrates that the circuit court, despite having found Officer Moss's testimony generally credible, misapplied the law when it applied a *subjective* standard rather than the proper *objective* standard in concluding no probable cause existed. Accordingly, this court reverses and remands for further proceedings consistent with this opinion.

¶16 Whether probable cause exists is an objective test. *See **Richardson***, 156 Wis. 2d at 148. Probable cause exists if the totality of the circumstances

---

[5] The circuit court's apparent finding that Officer Moss did not believe probable cause existed prior to administering the PBT is arguably clearly erroneous given Officer Moss's uncontroverted testimony to the contrary and the circuit court's clear reliance on its personal belief that a PBT should *never* be administered if an officer believes probable cause already exists. However, because this court concludes probable cause existed prior to administration of the PBT, it is unnecessary for this court to resolve that question. *See **State v. Lickes***, 2021 WI 60, ¶33 n.10, 397 Wis. 2d 586, 960 N.W.2d 855 ("Issues that are not dispositive need not be addressed." (citation omitted)).

"would lead a reasonable police officer to believe that the defendant probably" was driving under the influence. *See* ***Nordness***, 128 Wis. 2d at 35 (citations omitted).

¶17    The record demonstrates that Officer Moss had a substantial amount of reliable, factual information—without the PBT results—that would indicate to a reasonable police officer that Zimmer had probably violated the statute prohibiting driving while under the influence of an intoxicant.    The totality of the circumstances showed that before administering the PBT test, Officer Moss knew that Zimmer:  (1) drove recklessly by ignoring two red light signals; (2) could not maneuver his car into a parking lot correctly but instead drove over the curb; (3) appeared confused about the officer's instructions; (4) had difficulty getting his driver's license out of his wallet; (5) had slurred speech and bloodshot and glassy eyes; (6) had lost control of his bodily functions; (7) showed all six clues on the HGN test; (8) exhibited severe balance problems on the physical field sobriety tests; and (9) lacked the ability to concentrate on the number field sobriety test by not stopping at the correct end number as instructed.

¶18    Applying the appropriate objective standard, this information would lead a reasonable police officer to believe Zimmer was probably operating a motor vehicle while under the influence of an intoxicant. *See* ***Nordness***, 128 Wis. 2d at 36-37.  Therefore, Officer Moss had probable cause to arrest before administering the PBT.[6]  Even the circuit court *itself* acknowledged it believed probable cause

---

[6] In his brief, Zimmer points to factors that do *not* support a conclusion that he was driving under the influence, such as he was not speeding and was not observed swerving, he denied drinking any alcohol, and the officer did not smell alcohol.  These facts do not change the existence of factors that would lead a reasonable officer to believe that Zimmer was probably driving under the influence.

existed. However, despite having explained that the proper standard for determining whether probable cause existed is the objective reasonable person standard,[7] the circuit court inexplicably concluded that if Officer Moss had probable cause to arrest without the PBT, he would have proceeded to arrest without administering it. Based on that premise, the circuit court ruled that there was no probable cause. Thus, even though the circuit court believed probable cause to arrest existed based solely on the officer's observations and field sobriety tests, it nevertheless concluded that *because* the officer elected to do a PBT, this somehow nullifies the probable cause that existed. This is not the law.[8]

¶19 As our supreme court has often stated: "Drunk driving is indiscriminate in the personal tragedy of death, injury, and suffering it levies on its victims. It may transform an innocent user of a highway into a victim at any time—with no advance notice and no opportunity to be heard." *Id.* at 33. Moreover, drunk driving "is also a scourge on society: drunk driving exacts a heavy toll in terms of increased health care and insurance costs, diminished economic resources, and lost worker productivity. It is an affliction which produces no offsetting human or economic benefits; it engenders no positive human or economic incentive. It destroys and demoralizes personal lives and

---

[7] The circuit court explained to the parties that "at this stage of the game, the question is whether or not a *reasonable police officer* under these circumstances and based upon the … totality of circumstances, based on the failed testing, his slurred speech, glassy eyes, failure on the HGN test primarily, whether or not they felt there was probable cause to arrest." (Emphasis added.)

[8] It seems the circuit court may have allowed its dislike for the PBT and its personal belief that police officers should never administer a PBT if they already have probable cause to arrest without doing so. But dislike for a law does not mean a court may ignore it, nor is it the circuit court's role to impose its personal policing style on a trained and experienced police officer.

shocks society's conscience.  It has no legitimate place in our society."  ***Id.*** at 33–34.

¶20    To combat the scourge of drunk driving, the legislature has provided WIS. STAT. § 343.303 as a "screening tool" to assist the police in enforcing OWI laws.  *See **State v. Goss***, 2011 WI 104, ¶¶2, 27, 338 Wis. 2d 72, 806 N.W.2d 918.  Section 343.303 provides:

> If a law enforcement officer has probable cause to believe that the person is violating or has violated [WIS. STAT. §] 346.63(1) or (2m) or a local ordinance in conformity therewith, … the officer, prior to an arrest, *may request* the person to provide a sample of his or her breath for a preliminary breath screening test using a device approved by the department for this purpose.  The result of this preliminary breath screening test *may be used* by the law enforcement officer for the purpose of deciding whether or not the person shall be arrested for a violation of [listed offenses] and whether or not to require or request chemical tests as authorized under [WIS. STAT. §] 343.305(3).

***Id.*** (emphasis added).  The text of § 343.303 says an officer *may request* a PBT and states how the result *may* be used.  There is nothing in this statute that prohibits an officer from asking a suspect to take a PBT when probable cause to arrest already exists.  It may be the case that some officers do and others do not.  It also may depend on individual department policies or the circumstances on the street.  Regardless, if police action does not violate the law enacted by the legislature, courts should not dismiss citations—even if the court dislikes the law or personally believes a police officer should not request a PBT if the officer believes probable cause to arrest already exists.  *See **State v. Smith***, 2018 WI 2, ¶32 n.18, 379 Wis. 2d 86, 905 N.W.2d 353 (cautioning courts to recognize that police officers are tasked with making "split-second" on-the-street decisions, often "in circumstances that are tense, uncertain, and rapidly evolving." (citation

omitted)).[9]  Because the circuit court improperly applied a subjective standard rather than the objective reasonable officer standard in concluding no probable cause existed, and because application of the proper standard establishes the officer had probable cause to arrest before administering the PBT, the circuit court erred in dismissing Zimmer's OWI citations.[10]

---

[9] At the suppression hearing, Zimmer argued that *County of Jefferson v. Renz*, 231 Wis. 2d 293, 603 N.W.2d 541 (1999), prohibits police from administering a PBT if probable cause to arrest already exists.  This court disagrees.  *Renz* did not address whether a PBT *may* be administered despite an officer already having probable cause to arrest.  Rather, it addressed whether an officer needed "probable cause to arrest" before administering a PBT.  *Id.* at 295. *Renz* concluded an officer did not need probable cause to arrest before doing the PBT.  *Id. Renz* did not address the converse—whether an officer *may* administer a PBT even when he already has probable cause to arrest.  Our supreme court in *Renz* did, however, acknowledge that there may be occasions when an officer has probable cause to arrest and still proceeds to administer the PBT.  *Id.* at 306 (acknowledging that an officer may occasionally have probable cause before deciding to administer a PBT).

[10] Because the conclusion that probable cause existed prior to administration of the PBT resolves this matter, it is unnecessary for this court to address the parties' arguments as to whether Officer Moss complied with WIS. STAT. § 343.303 in administering the PBT.  *See Water Well Sols. Serv. Grp., Inc. v. Consolidated Ins. Co.*, 2016 WI 54, ¶33 n.18, 369 Wis. 2d 607, 881 N.W.2d 285 ("We decide cases on the narrowest grounds possible.").  However, it is noteworthy that despite the circuit court's conclusion that § 343.303 requires use of a "magic word," courts generally refrain from imposing a "magic word" requirement that the statutory text itself does not require.  *See, e.g.*, *Marathon County v. D.K.*, 2020 WI 8, ¶66, 390 Wis. 2d 50, 937 N.W.2d 901 (Rebecca Grassl Bradley, J., concurring) ("We do not impose a "'magic words'" requirement in the law and this court has repeatedly rejected them." (citations omitted)); *see also State v. Lepsch*, 2017 WI 27, ¶36, 374 Wis. 2d 98, 892 N.W.2d 682 (rejecting "magic words" requirement in the context of a circuit court inquiring about juror bias); *State v. Wantland*, 2014 WI 58, ¶33, 355 Wis. 2d 135, 848 N.W.2d 810 (rejecting "magic words" requirement in context of withdrawing consent under the Fourth Amendment (citation omitted)); *Elections Bd. v. Wisconsin Mfrs. & Com.*, 227 Wis. 2d 650, 654, 669-70, 597 N.W.2d 721 (1999) (rejecting "magic words" requirement in context of what is required to be "express advocacy"); *ECO, Inc. v. City of Elkhorn*, 2002 WI App 302, ¶23, 259 Wis. 2d 276, 655 N.W.2d 510 ("None of these statutes requires a [public records] request to contain any 'magic words' nor do they prohibit the use of any words.").

¶21　　The circuit court's order dismissing Zimmer's OWI citations and suppressing the PBT is reversed and the cases are remanded for further proceedings consistent with this opinion.

*By the Court.*—Order reversed and cause remanded for further proceedings.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.