WTMJ, INC. and Allen E. May, and Journal/Sentinel, Inc., Petitioners-Respondents-Cross Appellants,

v.

Michael J. SULLIVAN, Secretary of the Department of Corrections, Mark H. Bennett, District Attorney for Columbia County, Wisconsin, Respondents-Appellants-Cross Respondents.†

Court of Appeals

*No. 96–0053. Submitted on briefs August 12, 1996.—Decided September 12, 1996.*

(Also reported in 555 N.W.2d 140.)

†Petition to review denied.

For the respondents-appellants-cross respondents the cause was submitted on the briefs of *James E. Doyle*, attorney general, and *Alan Lee*, assistant attorney general.

For the petitioners-respondents-cross appellants the cause was submitted on the briefs of *David Lucey* and *Lisa M. Arent* of *Foley & Lardner* of Milwaukee.

Before Dykman, P.J., Roggensack and Deininger, JJ.

DYKMAN, P.J.   This is an open records case. The State of Wisconsin appeals from a judgment awarding attorneys' fees to WTMJ. It also appeals from an order declining to reconsider that judgment. WTMJ cross-appeals from the order because the circuit court refused to require attorneys' fees paid for the motion for reconsideration. We conclude that the trial court reasonably found that WTMJ substantially prevailed in this case. WTMJ is therefore entitled to its

attorneys' fees for both the judgment and the order. We therefore affirm the judgment and reverse the order.

Jeffrey Dahmer and Jesse Anderson, inmates at Columbia Correctional Institution (Columbia), were killed on November 28, 1994. On November 30, 1994, WTMJ made an open records request for the prison records of Dahmer, Anderson, Christopher Scarver, another inmate at Columbia who eventually pled guilty to killing Dahmer and Anderson, and David Spanbauer. Spanbauer had previously been incarcerated in Columbia and had recently been arrested for sexual assault and murder.

Section 19.35(1), STATS., provides that any person has a right to inspect any government record, "[e]xcept as otherwise provided by law." Section 19.35(1)(am) permits individuals or persons authorized by individuals to inspect personally identifiable information pertaining to the individual, subject to several exceptions.

If a custodian of public records refuses to release requested records and the requester "*prevails in whole or in substantial part*" in a mandamus action brought to obtain the records, the requester may recover reasonable attorney fees, damages of not less than $100, and other actual costs. Section 19.37(2), STATS. (emphasis added).

The Department of Corrections (DOC) record custodian replied to WTMJ on December 1, 1994. The parties differ as to the effect of this reply. We deem the relevant parts to be:

> The files of Jeffrey Dahmer, Jesse Anderson and Christopher J. Scarver will not be made available to you for your inspection at this time at the request of the Columbia County District Attorney's office and the Columbia County Sheriff's

office. Once the criminal investigation is completed redacted copies of the records will be made available for inspection. Copies of some confidential records such as medical records, clinical records, alcohol and drug treatment records and presentence investigations will not be provided. This denial is supported by § 19.35(1)(am)1., Stats.

The same process will apply to the inspection of David Spanbauer's institutional file.

The record custodian noted that in March 1994, a redacted copy of Dahmer's institutional file was made for the MILWAUKEE JOURNAL and that WTMJ was entitled to copies of that file. However, the custodian wrote, "As noted above, you cannot review any of Mr. Dahmer's file from March, 1994, to date until the investigation is completed."

WTMJ immediately began a mandamus action to obtain the requested records. However, the usual issue in an open records case, the requester's entitlement to the records, was never litigated. Instead, the State soon agreed to provide the requested records, with two insignificant exceptions which WTMJ does not contest. A "rolling release" was set. Scarver's records would be released on December 30, 1994, and the remainder of the records by January 5, 1995. Apparently that occurred.

WTMJ then asked the trial court to order the State to pay its attorneys' fees because it had prevailed in substantial part. The State objected to doing so because it believed that it had in good faith released the records of its own volition. This, the State argued, was the real reason for the release, not WTMJ's lawsuit. The State concludes that an award of attorneys' fees penalizes it for cooperating with WTMJ's request.

The parties first differ on whether the State refused to release the records. The State asserts that its response was that it would release the records when the criminal investigation was completed. WTMJ argues that its request for the records was denied. Both parties base their assertions on the December 1, 1994 DOC letter.

■

When evidence to be considered is documentary, we review the document *de novo. Racine Educ. Ass'n v. Board of Educ.*, 145 Wis. 2d 518, 521, 427 N.W.2d 414, 416 (Ct. App. 1988). We conclude that the DOC's December 1 letter is a refusal. The words "will not be made available to you at this time" and "you cannot review" are not words associated with acceptance of WTMJ's demand for records. We do not believe that the DOC's qualification that some of the records would be released when an investigation was completed is sufficient to change the December 1 letter from a denial to an agreement to produce. The letter did not indicate when the investigation would terminate. Were we to accept the State's argument, government could effectively avoid the requirements of the open records law by merely stating that records would be supplied eventually. This is contrary to the policy set out in § 19.35(4), STATS., which requires that upon request, an authority shall fill or deny the request "as soon as practicable and without delay." Those are the statutory choices: comply or deny. In *State ex rel. Auchinleck v. Town of LaGrange*, 200 Wis. 2d 585, 597, 547 N.W.2d 587, 592 (1996), the court noted, "In sum, the language and the public policy of the open records and open meetings laws require *timely* access to the affairs of government." (Emphasis added.) The State's third

choice, compliance at some unidentified time in the future, is not authorized by the open records law.

Having concluded that the DOC denied WTMJ's request, we must next determine whether WTMJ prevailed in this action in whole or in substantial part. If it did, it is entitled to its attorneys' fees, damages and costs. It is unnecessary to consider whether the State might have prevailed had it litigated whether it was entitled to refuse WTMJ's request under some exception to the open records law. The State explicitly disclaimed reliance on an exception to the open records law, asserting that it did not want to waste anyone's time by making such a claim. Nor do we decide whether a custodian may produce records during an open records mandamus action and successfully defend against a motion for attorney fees by showing that, had the original demand for records been denied, the denial would have been affirmed by the circuit court. *See Vollmer v. Luety*, 156 Wis. 2d 1, 10-11, 456 N.W.2d 797, 801-02 (1990) (we generally do not decide issues not raised in the trial court). Though the State fears that this case collaterally involves these and other issues, it does not. The only issue we consider or decide is WTMJ's entitlement to attorneys' fees.

A party seeking attorney fees under § 19.37(2), STATS., must show that prosecution of the action could reasonably be regarded as necessary to obtain the information and that a "causal nexus" exists between that action and the agency's surrender of the information. *State ex rel. Vaughan v. Faust*, 143 Wis. 2d 868, 871, 422 N.W.2d 898, 899 (Ct. App. 1988). In Wisconsin, the test of cause is whether the actor's action was a substantial factor in contributing to the result. *Id.* The action may be one of several causes; it

need not be the *sole* cause. *Clark v. Leisure Vehicles, Inc.*, 96 Wis. 2d 607, 617, 292 N.W.2d 630, 635 (1980). Causation is a question of fact, and we will not overturn a trial court's findings as to causation unless they are clearly erroneous. *See Eau Claire Press Co. v. Gordon*, 176 Wis. 2d 154, 160, 499 N.W.2d 918, 920 (Ct. App. 1993). However, in an open records case, causation is often an inference drawn from documentary or undisputed facts. In that situation, as here, we will affirm the trial court's findings as to causation if they are reasonable. *Id.* at 160-61, 499 N.W.2d at 920.

The State apparently agrees with this standard of review, for it cites and does not attempt to distinguish *Cox v. U.S. Dep't of Justice*, 601 F.2d 1, 6 (D.C. Cir. 1979), the case *Eau Claire Press Co.* followed as the standard of review in open records cases. The State asserts that "[t]here was no causal nexus between this lawsuit and the department's surrender of the information." Though this suggests a *de novo* standard of review, we conclude that the State does not quarrel with our conclusion that to obtain a reversal of the trial court's findings that this lawsuit caused the release of the records, it must show that the trial court's findings are unreasonable.

Keeping in mind that all that WTMJ had to show was that this lawsuit was *a* cause, not *the* cause, of the records' release, we examine the trial court's reasons for its findings of causation. We also recognize that the mere filing of the complaint and the subsequent release of the documents is insufficient to establish causation, *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1496 (D.C. Cir. 1984), though we must be careful in relying upon federal cases which may not use the Wisconsin "substantial factor" test for causation.

The first reason the trial court concluded that this lawsuit caused the State to release the documents was that the State had originally denied WTMJ's open records request and refused to make the documents available until after an investigation. We have already determined that the DOC's response was a refusal. The State asserts that its good faith, not this lawsuit, caused the release of the records. But that is only one inference which could be drawn from the State's change of position after this lawsuit was filed. Indeed, under Wisconsin's view of causation, that could be *a* reason for the release. But what the State must now show to prevail is that this lawsuit was *not* a cause of the document's release. Thus, the State's good faith and WTMJ's advocacy could both be causes of the document's release, and we would still be required to affirm the trial court.

■

It was reasonable for the trial court to conclude that WTMJ's advocacy caused the State to release most of the documents. The State did not assert that it had an ironclad case. It couched its view in terms of "a very good argument" and "records that they very arguably could have refused to give up." The trial court could have reasoned that the State decided to release the records in part because of its good faith but in part because it realized that the statute cited by the DOC record custodian, § 19.35(1)(am), STATS., was only applicable to requests by persons who wanted their own records. And, the mere citation to an exemption statute is not specific enough to successfully withhold a record. *Oshkosh Northwestern Co. v. Oshkosh Library Bd.*, 125 Wis. 2d 480, 485, 373 N.W.2d 459, 463 (Ct. App. 1985).

The trial court was also entitled to infer that because there was no open records exception applicable to all of the DOC's records, their transfer to the district attorney's office did not create an exemption. This was the result in a case pending in this court at the time of the State's agreement to release the records. *See Nichols v. Bennett*, 190 Wis. 2d 360, 526 N.W.2d 831 (Ct. App. 1994), *aff'd*, 199 Wis. 2d 268, 544 N.W.2d 428 (1996). The trial court could have inferred that at least some of the DOC's voluminous records would have had no relation to a murder investigation and that the State was aware of that, in part causing its decision to voluntarily release the records. In short, the State has not shown that the trial court's finding of causation was unreasonable.

The trial court gave two other reasons for its finding. First, that WTMJ substantially prevailed by negotiating a compromise on the dates the documents would be released, and second, that WTMJ forced the State to abandon the criminal investigation exemption that it was claiming under § 19.35(1)(am), STATS. We have discussed these reasons in part. We need not consider them further because we have concluded that the first of the trial court's findings as to causation was reasonable.

The State asserts that awarding fees in this case will only encourage requesters to quickly file mandamus actions. We doubt that this is correct. The "quickness" horse is already out of the barn. In *Auchinleck*, the court said: "If a municipality withholds a record or delays granting access, the requester may immediately bring an action for mandamus seeking release of the record." 200 Wis. 2d at 592-93, 547 N.W.2d at 590.

We again note that the legislature has set the policy for this and other open records cases. Section 19.35(4)(a), STATS., requires that records be supplied as soon as practicable and without delay. Section 19.31, STATS., provides in pertinent part: "[I]t is declared to be the public policy of this state that all persons are entitled to the greatest possible information regarding the affairs of government and the official acts of those officers and employes who represent them." These are not always easy statutes with which to comply. There are many exemptions to Wisconsin's open records law throughout the statutes. A records custodian is required to quickly make difficult decisions. The penalty for inadequate compliance is severe; attorney fees can be substantial. But the legislature has decided that this is worth the benefit of openness. While that policy can be disputed, it is not this court's mission to set the public policy for the State of Wisconsin. *State ex rel. Swan v. Elections Bd.*, 133 Wis. 2d 87, 93-94, 394 N.W.2d 732, 735 (1986).

On cross-appeal, WTMJ contends that the trial court could not make a finding that WTMJ substantially prevailed and then decline to award its attorneys' fees for the rehearing brought on by the State's motion. We agree. The trial court concluded that awarding fees for the rehearing motion was within its discretion, and because the motion clarified the court's original decision, which was difficult to make, fees would not be awarded.

■

But § 19.37(2)(a), STATS., requires that the court "shall" award attorney fees to a prevailing requester. "Shall" is presumed to be mandatory when it is used in a statute. *In re Angel Lace M.*, 184 Wis. 2d 492, 511, 516 N.W.2d 678, 683 (1994). The State argues only that

the court's refusal to award fees for the rehearing indicates that the court had serious doubts as to whether WTMJ had substantially prevailed in this litigation. But in its decision on the State's motion for rehearing, the court said that "the plaintiffs in this case did substantially prevail in terms of their vigorous access to documents at the earliest possible date." We conclude that the trial court erred by refusing to award fees for the rehearing, and we remand to permit it to do so.

*By the Court.*—Judgment affirmed; order reversed and cause remanded with directions.