SHIRLEY S. ABRAHAMSON, J.

(concur-

ring). The Newspaper no longer requests a record of the motion or votes cast at the Commission's closed meeting on February 20, 2012. The Newspaper obtained the information it was seeking about that meeting on March 22, 2012. This was six days after the Newspaper filed this mandamus action against the Commission under Wis. Stat. § 19.37(l)(a) (2011-12)[1] and 20 days before the Commission was served on April 22, 2012.
¶ 108. The Newspaper now seeks reimbursement under the public records law for the attorney fees, damages, and other actual costs it has incurred in bringing this mandamus action against the Commission.
¶ 109. For the reasons set forth, I conclude that the Newspaper is not entitled to recover reasonable attorney fees, damages, or other actual costs, even though the Newspaper is correct in many of its arguments about its compliance with the public records law and the Commission's noncompliance with that law. I write separately because the majority opinion confusingly skirts around the toughest issues presented and fails to provide needed guidance to record requesters, record custodians, litigants and their counsel, and courts.
¶ 110. This concurrence is organized into four parts.[2]
*637 ¶ 111. First, I set forth the relevant provisions of the public records law (Wis. Stat. §§ 19.21-.39) and the open meetings law (Wis. Stat. §§ 19.81-.98).
¶ 112. Second, I consider whether the request submitted by the Newspaper constituted a valid record request under the public records law. I conclude that it did. Any implication in the majority opinion that the Newspaper's request was too poorly worded to constitute a valid record request is, in my view, misleading and plainly incorrect.
¶ 113. Third, I agree with the third-party amicus brief filed by the Wisconsin Department of Justice that the Commission was obligated to respond to the Newspaper's record request by stating that the requested record did not exist.
¶ 114. Fourth, I consider whether the Newspaper is entitled to recover reasonable attorney fees, damages, and other actual costs from the Commission. This is the primary issue presented in the instant case, and it turns on whether under Wis. Stat. § 19.37(2)(a), the Newspaper has prevailed "in whole or in substantial part" in its mandamus action against the Commission.[3]
¶ 115. The court of appeals remanded the matter to the circuit court to determine whether the Newspaper's mandamus action was a cause of the Commission's release of information on March 22, 2012, such that the Newspaper prevailed in substantial part in *638 the mandamus action and is entitled to reasonable attorney fees, damages, and other actual costs.[4]
¶ 116. The Newspaper objects to the remand, contending that the Commission's failure to tell the Newspaper that the record it was requesting did not exist subjects the Commission to liability as a matter of law.
¶ 117. In my view, the Newspaper has not sufficiently tethered its argument to the language of Wis. Stat. § 19.37(2)(a), which grants attorney fees, damages, and other actual costs when a requester has prevailed in whole or in substantial part in a mandamus action. Thus, I conclude that the Commission's failure to inform the Newspaper that it was requesting a nonexistent record does not demonstrate as a matter of law that the Newspaper has prevailed in substantial part in its mandamus action against the Commission. Although it seems that the Newspaper was sandbagged, the Newspaper is not entitled to its requested relief.
I
¶ 118. I begin by examining the statutory framework underlying the present dispute.
¶ 119. I turn first to the public records law, Wis. Stat. §§ 19.21-.39. Several provisions of the public records law are significant in the instant case:
• Wisconsin Stat. § 19.31, the declaration of policy in the public records law, reflects Wisconsin's deep *639 commitment to open and transparent government.[5] Section 19.31 provides that the policy of the public records law is to ensure that the public has access to "the greatest possible information regarding the affairs of government and the official acts of those . . . who represent them." (Emphasis added.) Section 19.31 further directs that the public records law "shall be construed in every instance with a presumption of complete public access, consistent with the conduct of governmental business."
• Wisconsin Stat. § 19.32(2) defines the word "record" broadly as "any material on which written, drawn, printed, spoken, visual, or electromagnetic information ... ."
• Wisconsin Stat. § 19.35(l)(b) grants members of the public "a right to inspect a record and to make or receive a copy of a record. (Emphasis added.)
• Wisconsin Stat. § 19.35(l)(h) declares that a request to inspect, copy, or receive a copy of a record "is deemed sufficient" for purposes of the public records law "if it reasonably describes the requested record or the information requested." (Emphasis added.)
• Wisconsin Stat. § 19.35(4)(a) provides that the custodian of a record, upon receiving a record request, shall "as soon as practicable and without delay, either fill the request or notify the requester of the authority's determination to deny the request. . . and the reasons therefor."
• Wisconsin Stat. § 19.37(1) explains that if a written request for disclosure of a record is submitted but the custodian withholds the record or delays granting access to the record, then a mandamus action may be brought to compel the record's disclosure.
*640 • Wisconsin Stat. § 19.37(2)(a) allows a requester to recover "reasonable attorney fees, damages of not less than $100, and other actual costs ... if the requester prevails in whole or in substantial part" in a Wis. Stat. § 19.37(1) mandamus action.
¶ 120. While the instant case revolves primarily around the public records law, one provision of the open meetings law is also relevant. Specifically, because the Newspaper requested a record of the motion and vote of a governmental body, Wis. Stat. § 19.88(3) comes into play. Wisconsin Stat. § 19.88(3) requires that motions and roll call votes be recorded, stating: "The motions and roll call votes of each meeting of a governmental body shall be recorded, preserved and open to public inspection to the extent prescribed in subch. II of ch. 19 [the public records law]."[6]
¶ 121. The distinction and interconnection between the public records law and the open meetings law are illustrated by State ex rel. Zinngrabe v. School District of Sevastopol, 146 Wis. 2d 629, 635, 431 N.W.2d 734 (Ct. App. 1988). In Zinngrabe, the court of appeals stated that the public records law "does not dictate which documents are to be created or direct the government to maintain specific records."[7] Instead, "[t]he duty to maintain such records and the enforce *641 ment of such duty" are grounded in the open meetings law.[8] The public records law governs the right to access records — not the creation of records.
¶ 122. With this statutory framework in mind, I turn to the substantive issues presented.
II
¶ 123. The first question presented is whether the Newspaper submitted a valid record request. I conclude that it did. My conclusion is supported by the language of the request itself, by Wis. Stat. § 19.35(l)(h) (the provision governing the sufficiency of record requests), and by case law.
¶ 124. At a special meeting of the Commission held in closed session on February 20, 2012, a commissioner moved to reconsider candidates who had previously been eliminated from the pool of applicants for the open police chief position. The motion was made, seconded, and approved by a voice vote.
¶ 125. Later that day, the Commission issued a press release announcing its decision. According to the press release, the Commission had "determined that it preferred to have a broader pool of candidates moving forward." The press release did not state which commissioners had made, seconded, or voted in favor of the motion.
¶ 126. Shortly after the Commission issued its press release, the Newspaper published an article written by Christine Won, one of its reporters, regarding the Commission's decision to broaden its applicant pool. According to Won's article, certain members of *642 the community were critical of the Commission's decision and were accusing the Commission of racial discrimination.
¶ 127. On February 22, 2012, two days after the Commission's special meeting, Won e-mailed the Commission to request a record of the motion and votes cast at the meeting.
¶ 128. Won had apparently been told to direct her "open records request" to the custodians of the record she was seeking. Accordingly, Won e-mailed the president and secretary of the Commission, asking "to know" how each Commissioner voted at the special meeting. Won's e-mail read in relevant part as follows:
I was told to make my open records request directly to the custodians so am asking you as the president and secretary of the commission respectively.
I am officially asking on the record to know the vote of each commissioner from the closed PFC meeting Monday in which they decided to reopen the police chief search.
If you choose to deny please provide a written explanation.
¶ 129. Won followed up with a second e-mail that same day. In her second e-mail, Won specifically requested "the recorded motions and votes of each [] commissioner at the closed meeting. . . ." (Emphasis added.) This e-mail read in relevant part as follows:
Under statute 19.88(3) — I am asking for the recorded motions and votes of each PFC commissioner at the closed meeting on Monday, including who made the motion and who seconded it.
*643 I would appreciate this information as soon as practicable and without delay. If you choose to deny this request, please provide a written explanation.
¶ 130. These two e-mails constitute the record request at issue in the instant case.
¶ 131. Won's first e-mail clearly states the "information requested" by asking for "the vote of each commissioner from the closed PFC meeting Monday in which they decided to reopen the police chief search." Won's second e-mail further specifies the "requested record" by asking for "the recorded motions and votes of each [ ] commissioner at the closed meeting on Monday, including who made the motion and who seconded it." These e-mails make clear what Won was seeking and constitute a valid record request.
¶ 132. The majority opinion does not directly contradict this conclusion. However, it repeatedly implies that Won's e-mails were too imprecise to constitute a valid record request.
¶ 133. The majority opinion contends that "the requests could reasonably be perceived as seeking information, rather than a record."[9] It also observes that Won's second e-mail cited a provision of the open meetings law (Wis. Stat. § 19.88(3)) rather than the public records law.[10] Finally, the majority opinion characterizes the Newspaper as a "wordsmith with experience and sophistication," suggesting that record requests submitted by journalists must meet some special standard of clarity beyond that applied to other requesters.[11]
*644 ¶ 134. Any implication in the majority opinion that Won's e-mails did not constitute a valid record request is, in my view, plainly incorrect. I take this position for four basic reasons.
¶ 135. First, the request meets the standard for sufficiency set forth in Wis. Stat. § 19.35(l)(h). This section provides that a record request "is deemed sufficient if it reasonably describes the requested record or the information requested." (Emphasis added.) Case law explains that Wis. Stat. § 19.35(l)(h) does not require a record request "to contain any 'magic words' nor do[es it] prohibit the use of any words."[12] In the instant case, the record request reasonably described the record and information being requested and is therefore valid.
¶ 136. Second, the majority opinion's statement that Won's e-mails could reasonably be perceived as seeking information rather than a record is not persuasive.
¶ 137. In her first e-mail, Won explicitly characterizes her request as an "open records request." In her second e-mail, Won specifically requests "the recorded motions and votes of each [] commissioner at the closed meeting on Monday, including who made the motion and who seconded it." (Emphasis added.) In combination, these statements make clear that Won was not just requesting information that was not encapsulated in a record. She was requesting a record containing specific information, which she described in her e-mails.
*645 ¶ 138. Of course, what Won ultimately sought to obtain was information. But this fact does not undermine the validity of Won's record request.
¶ 139. A distinction can be drawn between requests for public records, which are governed by the public records law, and requests for information not contained in records, which are not subject to the public records law. However, the majority opinion goes too far and creates a false dichotomy between the two, suggesting that a request may be for either records or for information, but not for both.[13]
1 140. The words "record" and "information" are not mutually exclusive either in common parlance or under the public records law. Because the pursuit of information is the driving force behind record requests, the meanings of the two words are interconnected and overlapping in the context of the public records law.
¶ 141. For example, the declaration of legislative policy set forth at Wis. Stat. § 19.31 refers to the public's right under the public records law to access "information" regarding governmental business, providing that it is the state's public policy that "all persons are entitled to the greatest possible information . . . ."[14] To further that public policy, § 19.31 further provides that the public records law "shall be construed in every instance with a presumption of complete public access, consistent with the conduct of governmental business."[15]
*646 ¶ 142. Likewise, Wis. Stat. § 19.35(l)(h) refers to both information and records, stating that a request for a public record is sufficient "if it reasonably describes the requested record or the information requested." (Emphasis added.) The express language of § 19.35(l)(h) contradicts the implication in the majority opinion that because Won's initial e-mail to the Commission described the information she was seeking but not the record she was seeking, she did not make a valid record request.
¶ 143. In short, the suggestion in the majority opinion that Won's e-mails could reasonably have been interpreted as requesting information rather than a record conflicts with the language and policy of the public records law. I conclude that Won's e-mails constitute a valid record request notwithstanding Won's ultimate goal of obtaining information.
¶ 144. Third, the majority opinion's reliance on Won's reference to Wis. Stat. § 19.88(3) (a provision within the open meetings law) to demonstrate that the request was not sufficient is misguided. Won's reference to § 19.88(3) does not render Won's record request invalid.
¶ 145. As previously explained, no particular words are prohibited in a record request, so no particular language or references necessarily invalidate a record request.[16] Thus, Won's reference to § 19.88(3), in and of itself, is not dispositive. This conclusion is supported by ECO, Inc. v. City of Elkhorn, 2002 WI App 302, ¶¶ 25-26, 259 Wis. 2d 276, 655 N.W.2d 510, in which the court of appeals determined that although the request at issue referenced the federal Freedom of *647 Information Act (FOIA) instead of the Wisconsin public records law, it was a valid record request under the Wisconsin public records law.
¶ 146. More importantly, Won's reference to the open meetings law (that is, to Wis. Stat. § 19.88(3)) was not necessarily incorrect. Section 19.88(3) provides that the motions and roll call votes of a governmental body shall be recorded, preserved, and open to public inspection pursuant to the extent prescribed in subchapter II of Chapter 19 (the public record law). In the instant case, Won sought a record of the motion and votes of the Commission at a special meeting held on February 20, 2012. Her reference to § 19.88(3) can be reasonably understood as indicating that she believed the motion and votes would be recorded and made available to her pursuant to § 19.88(3) and the public records law. Section 19.88(3) was, in short, highly relevant to Won's record request, and Won's reference to it does not invalidate her request.
¶ 147. Fourth, Won's status as a journalist for the Newspaper does not affect the validity of her record request whatsoever. Neither the statutes nor the case law support the notion that different types of requesters must meet different standards of clarity in order for their record requests to be deemed sufficient under the public records law.
¶ 148. In sum, for all the reasons set forth, I conclude that Won's e-mails constituted a valid record request under the public records law. Because Won reasonably described the record and information being requested, the record request was sufficient. The majority opinion's suggestions to the contrary are misleading and unpersuasive.
*648 Ill
¶ 149. I turn to the second question presented: In responding to Won's record request, was the Commission obligated to explain that the requested record did not yet exist? I conclude that it was.
¶ 150. Won's e-mails requested a record that was required to be created under Wis. Stat. § 19.88(3) but that had not yet been produced.[17] The Commission did *649 not tell Won that she had requested a nonexistent record. Instead, the Commission sent Won two e-mails stating that it was denying Won's record request for public policy reasons. The e-mails set forth two different reasons for the denial, both of which the Commission has since abandoned.
¶ 151. The Commission's first e-mail cited a case that held that a vote in a closed governmental meeting "merely formalizes the result reached in the deliberating process,"[18] implying that the Commission believed the commissioners' vote was not required to be recorded. The Commission's second e-mail cited public policy reasons for denying Won's request, including concerns about the commissioners' well-being if their votes were made public.
¶ 152. By providing these reasons for its denial of Won's record request, the Commission implied that the requested record existed but was being withheld. The Newspaper responded to the Commission's apparent withholding of the record by filing a mandamus action *650 to compel disclosure of the record. The Commission knew, but the Newspaper did not know, that the record did not exist.
¶ 153. Had the Commission informed Won that the record she had requested did not exist, the Newspaper would have known it could not compel the Commission to disclose the nonexistent record under the public records law. Consequently, the Newspaper would not have filed a futile mandamus action under Wis. Stat. § 19.37(l)(a). It could instead have sought to compel the Commission to create the record under the open meetings law.
¶ 154. In short, this litigation was spawned by the Commission's failure to inform Won that the record she requested did not exist. Indeed, in this court, the Commission's primary arguments to defeat the Newspaper's claims rest on the fact that the record did not exist, not that the Commission acted reasonably or in good faith.
¶ 155. Unfortunately, the breakdown in communication that underpins the present case seems likely to recur in other cases. Requests for public records are common, and some requests will inevitably be filed for nonexistent records. The instant case therefore presents this court with a valuable opportunity to provide guidance to record custodians on how best to respond to requests for nonexistent records. The majority opinion fails to seize this opportunity.
¶ 156. I would adopt the position advocated by the Wisconsin Department of Justice in its amicus brief: In the simple scenario in which a record custodian knows it has no responsive record, the custodian *651 must notify the requester as soon as practicable and without delay that the requested record does not exist.[19]
¶ 157. My conclusion is supported by the text of the public records law itself.
¶ 158. The public records law is clear that a record custodian need not create a record simply to fill a record request; the duty to create a record must be found elsewhere.[20] The public records law is silent, however, regarding what a record custodian should say in response to a request for a nonexistent record. I conclude that the only reasonable interpretation of the public records law is that a record custodian must notify the requester when no responsive record exists.
f 159. My reasoning is as follows.
*652 ¶ 160. Under Wis. Stat. § 19.35(4)(a), "[e]ach authority, upon request for any record, shall, as soon as practicable and without delay, either fill the request or notify the requester of the authority's determination to deny the request in whole or in part and the reasons therefor (emphasis added)." The statutory options are, therefore, to comply with the record request or to deny it and provide an explanation. A refusal to grant access to the requested record amounts to a denial of the request.
¶ 161. In explaining a decision to deny a record request, a record custodian must be forthright and specific.[21]
¶ 162. To pay heed to the legislative declaration of policy that the public is "entitled to the greatest possible information regarding the affairs of government,"[22] and to meet the record custodian's responsibility of explaining with specificity a refusal to grant access to a record, a record custodian faced with a request for a record that the custodian knows (or should know) does not exist must promptly inform the requester that the record does not exist.
¶ 163. My conclusion is supported by written guidance that the Wisconsin Department of Justice has provided to the public on complying with the public records law. The Department of Justice has explained *653 that "[t]he public records law does not require authorities to create new records in order to fulfill public records requests," but" [i]f no responsive records exist, the authority should say so in its response."[23]
¶ 164. Considerations of common sense and judicial efficiency further support my conclusion. Notifying a requester that a requested record does not exist "avoids confusion and the appearance of delay, and decreases the likelihood of unnecessary litigation."[24] A record custodian who knows that a requested record does not exist but fails to inform the requester of that fact invites the requester to repeat the follies of the Newspaper in the instant case. A diligent requester will seek in vain to compel disclosure of a nonexistent record by filing a mandamus action.
¶ 165. It is easy for custodians to comply with the obligation to inform a requester of the nonexistence of a record. Record custodians are already required to respond to valid record requests under Wis. Stat. § 19.35(4)(a). Why shouldn't record custodians faced with requests for nonexistent records tell the truth in response to such requests by explaining that the records do not exist?
¶ 166. In sum, the Commission was obligated to inform Won that the record she requested did not exist. The Commission failed to fulfill that obligation, spurring the unnecessary and protracted litigation now before this court and causing both the Newspaper and the Commission to incur unnecessary expenses.
*654 IV
¶ 167. I turn, finally, to the question of whether the Newspaper is entitled to recover reasonable attorney fees, damages, and other actual costs incurred in the instant mandamus action against the Commission. I conclude that it is not.
¶ 168. Pursuant to Wis. Stat. § 19.37(2)(a), the Newspaper can recover reasonable attorney fees, damages, and other actual costs only if it has prevailed in whole or in substantial part in its mandamus action against the Commission. Section 19.37(2)(a) provides in relevant part as follows:
(2) Costs, fees, and damages, (a) Except as provided in this paragraph, the court shall award reasonable attorney fees, damages of not less than $100, and other actual costs to the requester if the requester prevails in whole or in substantial part in any action filed under sub. (1) relating to access to a record or part of a record under s. 19.35 (l)(a).
¶ 169. The public records law is silent with regard to the remedy available when a requester is induced to file a mandamus action under Wis. Stat. § 19.37(l)(a) by what the Newspaper characterizes as a custodian's misleading responses to a record request. The Newspaper asserts that it reasonably believed that the Commission's stated reasons for denying the record request were invalid and that the Newspaper was therefore justified in commencing the present mandamus action.
¶ 170. According to the Newspaper, failing to order the Commission to reimburse the Newspaper would reward the Commission for its obfuscation and would allow custodians to flout the procedural require- *655 merits and purpose of the public records law with impunity. According to the Commission, the nonexistence of the record eliminates the potential for any liability whatsoever under the public records law.
¶ 171. The Newspaper's argument has merit. By declining to grant the Newspaper its requested relief, this court runs the risk of discouraging the Newspaper and other record requesters from seeking to enforce their right to access public records in the future for fear of incurring the substantial attorney fees and costs the Newspaper now faces. This result would be antithetical to the purposes of the public records law.
¶ 172. Public policy supports granting the Newspaper's request for reimbursement of reasonable attorney fees, damages, and other actual costs even if, as the Commission would have us believe, the Commission simply made a mistake, with no malicious intent, and did not attempt to cover up an official act. "Practical realities dictate that very few of our citizens have the ability to be personally present during the conduct of government business. If we are to have an informed public, the media must serve as the eyes and ears of that public."[25] The danger is that the media will not serve in this role if the financial risk is too great.
¶ 173. Nevertheless, I conclude that the statutes do not afford the Newspaper the relief it seeks.
¶ 174. Wisconsin Stat. § 19.37(2)(a) requires that the Newspaper must prevail in whole or in substantial part in its mandamus action against the Commission to be awarded fees and costs.
¶ 175. Relying on case law, the court of appeals remanded the matter to the circuit court to determine *656 whether the Newspaper's mandamus action was a cause of the Commission's release of information on March 22, 2012, such that the Newspaper prevailed in substantial part in its mandamus action and is entitled to reasonable attorney fees, damages, and other actual costs.[26]
¶ 176. The Newspaper objects to the decision of the court of appeals, which remanded the matter. The Newspaper urges that as a matter of law, it has prevailed in substantial part in its mandamus action against the Commission. According to the Newspaper, the Commission is precluded from abandoning the reasons set forth in its initial denials of Won's record request and from belatedly arguing that the requested record did not exist. The Newspaper argues that the Commission is bound by its misleading responses and now has no remaining defense at all.
¶ 177. The essence of the Newspaper's argument is that the Commission violated the public records law by failing to inform Won that the record she had requested did not exist and that the law must provide a remedy for that violation.
¶ 178. Although it tries, the Newspaper cannot successfully tether its argument for fees, damages, and costs to the language of Wis. Stat. § 19.37(2)(a). Section 19.37(2)(a) provides plaintiffs with the right to recover reasonable attorney fees, damages, and other actual costs only under the circumstances specified in the statute: when plaintiffs prevail in whole or in substantial part in a Wis. Stat. § 19.37(1) mandamus action. The record in the instant case does not satisfy *657 this statutory requirement because the Newspaper has not demonstrated that it prevailed in whole or in substantial part in its mandamus action. Furthermore, the Newspaper does not seek a remand as the court of appeals ordered. Accordingly, I reluctantly conclude that the Newspaper is not entitled to the reasonable attorney fees, damages, and other actual costs that it requests under the public records law.
¶ 179. I would be remiss if I did not comment on the majority opinion's misguided discussion of State ex rel. Blum v. Board of Education, 209 Wis. 2d 377, 386, 565 N.W.2d 140 (Ct. App. 1997). In Blum, a requester asked for a copy of a student's academic records. The custodian refused to release the student's records, but in its response failed to cite the statutory provision that grants students the right to keep their records private.[27] The court of appeals concluded that a refusal to release a record for an inadequate reason "does not prevent a court from determining whether a 'clear statutory exception' applies" to support the refusal.[28]
¶ 180. Blum hinged on an express statutory exception to the mandate of Wis. Stat. § 19.35. The express statutory exception implicated the privacy rights of a third party.[29] Blum does not apply in the instant case. Try as it might, the majority opinion cannot locate a clear statutory exception applicable to *658 the present case. Instead, the majority opinion cobbles together several provisions and in a conclusory fashion opines that "a record's non-existence provides a clear statutory exception to disclosure under the public records law."[30]
¶ 181. In Blum, the applicability of the statutory exception should have been obvious and well known to the requester, the custodian, and the courts. In the instant case, whether the record existed was uniquely known only to the Commission, not to the Newspaper or the courts. In the instant case, unlike in Blum, the custodian (the Commission) did not provide sufficient notice to the requester (the Newspaper) to enable it to challenge the denial of its record request and did not provide a basis for judicial review.
¶ 182. In sum, I conclude that the Newspaper submitted a valid record request; that the Commission was obligated to, but did not, respond truthfully to the Newspaper's record request by explaining that the record did not exist; and that on this record, despite the Commission's failure to promptly inform the Newspaper that the record did not exist, the Newspaper is not entitled as a matter of law to recover attorney fees, damages, or other actual costs under the public records law. The record before the court does not fulfill the requirements set forth at Wis. Stat. § 19.37(2)(a) and in the case law.
¶ 183. For the reasons set forth, I write separately.
¶ 184. I am authorized to state that Justice ANN WALSH BRADLEY joins this opinion.

 While there are many statements and discussions in the majority opinion with which I take issue, I have limited the scope of this concurrence to the subjects I consider most pressing.

 Wisconsin Stat. § 19.37(2)(a) provides in relevant part that "the court shall award reasonable attorney fees, damages of not less than $100, and other actual costs to the requester if the requester prevails in whole or in substantial part in any action filed under sub. (1) relating to access to a record or part of a record .. . ."

 See WTMJ, Inc. v. Sullivan, 204 Wis. 2d 452, 458-59, 555 N.W.2d 140 (Ct. App. 1996) (explaining that when there is a causal nexus between the plaintiffs bringing a mandamus action and "the agency's surrender of the information," the plaintiff has prevailed in substantial part in the mandamus action).

 See State v. Beaver Dam Area Dev. Corp., 2008 WI 90, ¶ 2, 312 Wis. 2d 84, 752 N.W.2d 295.

 The Commission argues that Wis. Stat. § 19.88(3) does not apply in the instant case because the Commission's vote at its closed meeting on February 20, 2012, was not a roll call vote. The Commission overlooks, however, that Wis. Stat. § 19.88(3) also requires motions to be recorded. Regardless of whether the Commission's vote was a roll call vote, it was indisputably a vote on a motion that Wis. Stat. § 19.88(3) required to be recorded.

 State ex rel. Zinngrabe v. Sch. Dist. of Sevastopol, 146 Wis. 2d 629, 635, 431 N.W.2d 734 (Ct. App. 1988).

 Id.

 Majority op., ¶ 8.

 Id.

 Id., ¶¶ 8, 54, 83, 105.

 ECO, Inc. v. City of Elkhorn, 2002 WI App 302, ¶ 23, 259 Wis. 2d 276, 655 N.W.2d 510 ("None of these statutes requires a request to contain any "magic words" nor do they prohibit the use of any words.").

 Majority op., ¶ 54 ("[T]he requests could reasonably be perceived as seeking information, rather than a record." (Emphasis added.))

 Wis. Stat. § 19.31.

 See also ECO, Inc., 259 Wis. 2d 276, ¶ 23 ("[T]he legislature's well-established public policy presumes accessibility to *646 public records and mandates that open records laws be liberally construed to favor disclosure . . . .").

 Id., ¶¶ 25-26.

 The Newspaper asserts not just that it had the right to obtain the record Won requested but also that it had the right to obtain the record promptly. According to the Newspaper, the delayed creation of the record Won requested was one more example of the Commission's violating both the letter and the spirit of the public records and open meetings laws.
As the Wisconsin Department of Justice explains in its amicus brief, Wis. Stat. § 19.88(3) and parliamentary procedure strongly suggest that a governmental body must record all motions and votes at the time of the meeting or as soon thereafter as practicable. More specifically, the Department interprets the statement in Wis. Stat. § 19.35(4)(a) that a response must be provided "as soon as practicable and without delay" as follows:
DOJ policy is that ten working days generally is a reasonable time for responding to a simple request for a limited number of easily identifiable records. For requests that are broader in scope, or that require location, review or redaction of many documents, a reasonable time for responding may be longer. However, if a response cannot be provided within ten working days, it is DOJ's practice to send a communication indicating that a response is being prepared.
Wis. Dep't of Justice, Wis. Public Records Law: Wis. Stat. §§ 19.31-19.39 Compliance Outline at 13 (Sept. 2012), available at http://tinyurl.com/ljx49na (last visited June 15, 2015).
Requiring motions and votes to be promptly recorded furthers the policy of providing meaningful public access to information about governmental decisions and decision-making processes. See Wis. Stat. §§ 19.31, 19.81. In contrast, *649 construing Wis. Stat. § 19.88(3) as imposing no mandatory timeframe for recording a governmental body's motions and votes would render toothless the requirement that such motions and votes be recorded and would enable governmental bodies to deprive the public of meaningful access to important information by indefinitely postponing a record's creation.
With this in mind, I conclude that the record Won requested was not timely created by the Commission. The minutes of the February 20, 2012, Commission meeting, at which the motion to reopen the police chief applicant pool was made, seconded, and approved by a voice vote were not made available for public inspection until May 22, 2012, three months after the meeting took place.

 State ex rel. Cities Serv. Oil Co. v. Bd. of Appeals, 21 Wis. 2d 516, 539, 124 N.W.2d 809 (1963).

 The Wisconsin Department of Justice plays a special role with regard to the public records law. The legislature has accorded the Attorney General, who supervises and directs the Department of Justice, special significance in interpreting the public records law. The legislature has specifically authorized the Attorney General to advise any person about the applicability of the law. Wis. Stat. § 19.39. The Attorney General has not issued a formal or informal opinion letter or other document regarding the issue presented in the instant case. Rather, the Department of Justice has filed a nonparty brief expressing its view. The Attorney General's opinion, advice, and brief are not binding on this court, but we may give them persuasive effect. See Juneau County Star-Times v. Juneau County, 2013 WI 4, ¶ 36 n.18, 345 Wis. 2d 122, 824 N.W.2d 457.
Furthermore, the Department of Justice has issued a document entitled Wisconsin Public Records Law (Compliance Outline) that assists government entities and the public in interpreting and applying the public records law. See Wis. Dep't of Justice, Wis. Public Records Law: Wis. Stat. §§ 19.31-19.39 Compliance Outline (Sept. 2012), available at http://tinyurl.com/ljx49na (last visited June 15, 2015).

 See Zinngrabe, 146 Wis. 2d at 635.

 See Newspapers, Inc. v. Breier, 89 Wis. 2d 417, 427, 279 N.W.2d 179 (1979) (providing that if a record custodian denies a record request, "he must state specific public-policy reasons for the refusal," which will "provide a basis for review in the event of court action"). See also State ex rel. Kalal v. Circuit Court for Dane County, 2004 WI 58, ¶¶ 53-57, 271 Wis. 2d 633, 681 N.W.2d 110 (discussing the common, dictionary, plain meaning definition of the word "refusal" in a different statute).

 Wis. Stat. § 19.31.

 Wis. Dep't of Justice, Wis. Public Records Law: Wis. Stat. §§ 19.31-19.39 Compliance Outline at 1, 15, 17—18 (Sept. 2012), available at http://tmyurl.com/ljx49na (last visited June 15, 2015).

 Non-Party Brief of the Wisconsin Department of Justice, at 12.

 State ex rel. Newspapers, Inc. v. Showers, 135 Wis. 2d 77, 81, 398 N.W.2d 154 (1987).

 See WTMJ, Inc., 204 Wis. 2d at 458-59 (explaining that when there is a causal nexus between a mandamus action and "the agency's surrender of the information," the plaintiff has prevailed in substantial part in the mandamus action).

 Wisconsin Stat. § 19.36(1) provides that "[a]ny record which is specifically exempted from disclosure by state or federal law or authorized to be exempted from disclosure by state law is exempt from disclosure under s. 19.35(1)...."
Chapter 118 of the Wisconsin Statutes, applicable in Blum, mandates confidentiality of pupil records.

 State ex rel. Blum v. Bd. of Educ., Sch. Dist. of Johnson Creek, 209 Wis. 2d 377, 388, 565 N.W.2d 140 (Ct. App. 1997).

 See Wis. Stat. § 118.125(l)(c), (d) & (2).

 Majority op., ¶ 73.